(Nos. 1825, 1997, 2000, 2001, 2011, consolidated—

GLENBARD GOLF CLUB, INC., Nos. 1825, 1997, MARGARET Y. NEWMAN, No. 2000, ROBERT A. MARSH, ET AL., No. 2001, BRIDGET MORRIS, No. 2011, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed June 1, 1935.*

HADLEY, WEAVER & WOODWARD AND MARKMAN, DONOVAN & SULLIVAN, for claimant, Glenbard Golf Club, Inc., CHARLES W. HADLEY AND THOMAS C. DONOVAN, of counsel, CHILDS, BOBB & WESTCOTT, for other claimants.

OTTO KERNER, Attorney General; CARL DIETZ, Assistant Attorney General, for respondent.

MR. JUSTICE LINSCOTT delivered the opinion of the court:

This is a proceeding by the claimants to recover damages alleged to have been caused to the premises owned by them by the State of Illinois because of a change in the grade of State Routes No. 6 and No. 53. State Route No. 6 is also known as the Roosevelt Road.

Roosevelt Road extends in an easterly and westerly direction from Geneva, Illinois to Chicago, Illinois, and passes along the boundary of the premises of the claimants, Glenbard Golf Club, Inc., Margaret Y. Newman, Robert A. Marsh and Dagmar Marsh and Bridget Morris, in the outskirts of the village of Glen Ellyn, DuPage County. Prior to September 1, 1931, this portion of Roosevelt Road had been improved by the State of Illinois for two lanes of traffic, and on or about the date just mentioned, the State of Illinois changed the grade of this highway along and in front of a portion of the premises of the Glenbard Golf Club, Inc., and widened the highway by making four lanes of traffic rather than two. This is a durable, hard-surfaced road made of concrete.

The Glenbard Golf Club, Inc. purchased the premises consisting of one hundred twenty-nine (129) acres, sometime in 1930 for a total alleged price of Eighty-five Thousand Dollars ($85,000) or about Six Hundred Fifty Dollars ($650) per acre, and improved it as a golf course and expended almost an equal amount in improvements. The State of Illinois in making the improvements in September, 1931 changed the grade of the Roosevelt Road, and there is between the eastern and western boundaries of the golf course, a hollow through which the Little DuPage River runs. When the Roosevelt Road was first improved there was some filling in in the lowest places and the grade was changed at that time and again in September of 1931 this second grade was changed.

The golf course lies on the south side of the road and it is claimed that for a distance of 1,090 feet along the Roosevelt Road, the golf course frontage was damaged by an elevation of the highway. At some places the grade was changed as

much as 5.55 feet. This was down close to the Little DuPage River.

In changing the Roosevelt Road the State built a retaining wall along the southerly side of the road known as a rip rap wall. It is not a perpendicular wall but is sloped so that it will stand by gravity with a fill behind it. This wall stands some little distance from the north property line.

On the northwesterly side of the golf course, the State constructed in the year of 1932, State Route No. 53, and this is sometimes referred to as Bryant Avenue within the village limits of Glen Ellyn. Route No. 53 was excavated to a depth of 18 feet at the northwest corner of the premises and was excavated on a gradual slope from that point to a point 470 feet south, where it again reached the grade of the surrounding lands and it is charged by changing the grades in these two roads, the owners of the golf course have been greatly damaged for the reason that they do not have the same ingress to and egress from said premises as they had at the time they purchased the golf course sometime in the year 1930. The owners of the golf course by reason of these changes in grades aforesaid, are claiming damages to the extent of $150,000.00.

It was stipulated that the Roosevelt Road and Route No. 53 intersect at a point within the southern boundary of the village of Glen Ellyn, Illinois, and that these two highways have been owned, operated and controlled by the State of Illinois, through its Division of Highways, Department of Public Works and Buildings, for the past several years, and that Route No. 53 at that time of the taking of the testimony was under construction, but when completed would be improved with concrete, and it was then contemplated by the Division of Highways to eventually complete an underpass on Route No. 53 where the same crosses Route No. 6 which required a lowering of the grade of Route No. 53 to effectuate that purpose.

From the south line of Route No. 6 there is a concrete retaining wall on either side of the excavation of Route No. 53 which has a height of 18 feet at the southerly limits of Roosevelt Road and extends south from that for a distance of 470 feet before it reaches grade, and it is 9 feet on either side from the retaining wall to the property line, and that on the north side of Roosevelt Road there is a wall on either side of

Route No. 53 of the same height and extends from the north approximately the same distance and is of equal distance from the property line.

The Newman property, claim No. 2000, consisted of:

Lots 9 and 10 in Block 24 First Addition to Roosevelt Garden Home-sites, a subdivision of part of the West half of Section 13, Township 39, North, Range 10, East of the Third Principal Meridian,

and lies immediately east of said Route No. 53 and immediately north of the Roosevelt Road and was purchased in 1929. Margaret Y. Newman claims damages in the sum of $20,000.00 by reason of the change of the grade.

Robert A. Marsh and Dagmar Marsh are the claimants in cause No. 2001 and claim to be lawfully possessed of:

Lots 20 and 21 in Block 19 in Roosevelt Garden Homesites, a Subdivision in the South East Quarter of Section 14, Township 39 North, Range 10 East of the 3rd Principal Meridian, as per plat recorded May 5, 1921, in Book 9 of Plats, Page 61, Document No. 148152, situated in the Village of Glen Ellyn, in DuPage County, Illinois.

The premises are immediately west of Route No. 53 and immediately north of the Roosevelt Road extending north along Route No. 53, 150 feet and west along Route No. 6, 100 feet, and claimants claim damages in the sum of $25,-000.00 by reason of the change of the grade.

Claim No. 2011 is the claim of Bridget Morris, who is the purchaser under a contract for deed of:

Lots 1, 2, 3 and 4 in Block 1 in Roosevelt Hills Addition to Glen Ellyn, Illinois, in Section 23, Township 39 North, Range 10, East of the Third Principal Meridian, situated in the Village of Glen Ellyn, DuPage County, Illinois.

These premises lie immediately west of and adjoining said Route No. 53, and her premises extend 117 feet along said Route No. 53 from the Roosevelt Road. Claimant claims damages in the sum of $30,000.00 by reason of the change of the grade.

These cases have been well prepared at no small cost by exceedingly able and efficient counsel.

The Attorney General has made a motion to dismiss. The purpose was to raise the question as to the jurisdiction of the Court of Claims to hear and determine actions for damages to lands not taken but damaged by reason of hard road construction. It has been held by this court that in the build-

ing and maintenance of highway and hard surfaced roads, the State is exercising a governmental function and acting in its sovereign capacity, and, therefore, there can be no liability.

This court has in other cases made awards under similar conditions. Section 13 of Article 2 of the Constitution provided as follows:

"Private property shall not be taken or damaged for public use, without just compensation. Such compensation, when not made by the State, shall be ascertained by a jury, as shall be prescribed by law."

We regard this provision of the Constitution as being the fundamental law of this State and outweighing in importance and principle the general rule that the State, in building and maintaining of highway and hard surfaced roads, is exercising a governmental function and acting in its sovereign capacity, and therefore not liable.

By reference to the constitutional debates it will be seen that this provision of the Constitution was given very serious consideration, and Section 26 of Article IV of the Constitution provides: "The State of Illinois shall never be made defendant in any court of law or equity." During the discussions at the Constitutional Convention the question was asked: "If it was designed that the State may take private property without paying for it, or may take it without a jury any more than anybody else." While the convention was of the opinion that the State should not be sued, reference to other parts of the constitutional debates were to the effect that the State could do no harm, the State being the people, and it would fairly recompense any citizen for damage to his property.

Under the Legislative Act creating this court, and under the Constitution, this court takes the position that it has jurisdiction to fairly determine what damage, if any, these claimants have suffered and the motion to dismiss is accordingly overruled.

The statute creating the Court of Claims makes the court the judges of the law and the facts. In other words, we are to determine what the law is and what the facts are. We are, therefore, to consider the facts in this case as nearly as possible the same as a jury at the trial of a common law case would consider them and apply the same rules of law as nearly as possible as the Supreme Court would apply them were the case before that branch of the government.

In examining the testimony of witnesses concerning damages suffered by the claimants, we think that they are greatly in error in fixing the amount of the damages that these claimants are entitled to. It does not appear that these witnesses have given much consideration, if any, to the depreciation in value that all real estate throughout the entire country has suffered during the last five years, and in fixing damages for property located at the intersection of two streets, each of which are alleged to have damaged the private property. This court will not treat them as separate cases and the owners be entitled to double damages for the reason that that would manifestly be improper.

It is not contended by either of the claimants that either improvements took any of their private property, but they are asking only consequential damages on account of the change in the grade.

Injury or damage to property not taken in the construction of an improvement for which compensation is to be made must be a direct physical injury or disturbance of a right which the owner enjoys in connection with the property and causing damage in excess of that sustained by the public generally, and it is improper to treat that portion of the property which may be injured as a distinct and separate tract from such portions as may be benefitted. If the inconvenience of the road to a certain selected part of the tract will be outweighed by the additional convenience of the road to the residue of the tract, the tract will not be damaged by the inconvenience of the road. A partial effect only is not to be considered, but the whole effect; or in other words, the damage to the whole tract can only be considered, and it has been held that this is not deducting benefits or advantages from damages, but is merely ascertaining whether there be damages or not.

The burden is upon the petitioner to show the fair cash market value of the property and alleged injury must be based upon lawful and proper elements of damage and not upon conjecture of speculation.

One of these claimants has put in proof showing loss of profits while the improvements upon both of these roads were under construction. The State had the right to change the grades of these roads, and there is no complaint that the

action of the State was illegal or wrongful, that the work was unskillfully done or that there was any unreasonable delay in its execution. There was no physical taking of the claimants' property, but it is claimed that there was a diminution of the value of their property.

It is well settled that inconvenience, expense or loss of business occasioned to abutting owners by the temporary obstruction of a public street, and the consequent interference with their right of access to their property, made necessary by the construction of a public improvement, gives no cause of action against the municipality. The constitution provides no remedy for the property owner under such circumstances. Such claim is not damage to property not taken, within the meaning of the constitution.

> *Chicago Flour Co.* vs. *Chicago*, 243 Ill. 268 and cases therein cited.

Much testimony that is incompetent was offered by claimants and apparently was given at a time before the improvement on Bryant Avenue was completed and was given with reference to conditions existing at the time the witnesses testified, and it would seem that the witnesses had not considered their testimony with reference to a completed improvement. Depreciation of the value of property was apparently by one witness based upon the fact that the Village ordinance provided that a building at that particular location, that is at either one of these corners, all four corners being within the village limits of the village of Glen Ellyn be required to be set back fifty feet from the center of the road "however the Highway Department says they must be back one hundred feet from the middle of the road". This same witness testified to values based upon trades of property in that vicinity and also as to hearsay testimony; as to business of an oil station some distance away. He had been informed that such oil station sold 10,000 gallons of gas per month at a profit of $0.04 per gallon and 200 gallons of oil at a profit of $.50 per gallon, making a gross profit of $500.00. By no stretch of the imagination could this be considered as proper evidence.

The main frontage of all this property of the claimants is on Roosevelt Road, and it is true that the evidence shows a marked depreciation in valuation and the court cannot over-

look the fact that that same condition prevailed in regard to other property not touched by an improvement consisting of a forty foot concrete road which is entirely paid for by the State and to which the claimants have not contributed one cent directly and only an infinitesimal small sum indirectly. To say that all of this improvement has not been of a material benefit to the Glenbard Golf Club, Inc. would be such a gross mistake of fact as to be positively unfair to the taxpayers of Illinois.

Some of the values are based upon tables used by real estate men which tables were consulted by the witnesses in arriving at their conclusions as to values. Our attention has not been directed to any rules of law wherein such tables have been recognized by the courts as being competent in such cases, and we are of the opinion that there is no such rule of law for the reasons that the conditions determining values are too unstable and uncertain to even permit such a rule to be remotely helpful in such cases.

Under our view of the case, we will consider what damages have been done to the tract of 129 acres owned by the Glenbard Golf Club, Inc. It was stipulated that a traffic count was made of the east and west bound traffic on Roosevelt Road at the intersection of State Route No. 53 on October 1, 1932 and ending October 7, of the same year from six in the morning until six at night on each date; that 11,124 cars passed these corners going east and 12,614 were west bound. We cannot overlook the fact that beyond question this traffic was the result of a large expenditure of public funds in creating the improvement on Roosevelt Road, and we are at a loss to determine why this would not be beneficial to business property. The Golf Club Company purchased the 129 acres upon which the golf course is located in 1930. The property consists of 129 and a fraction acres, and the purchase price is alleged to have been $85,000.00, or approximately $650.00 per acre. The next year the golf company expended the sum of $70,000.00 on this property to make it a golf course, and this did not include the sum spent for the erection of the building on the northwest corner of the property.

In ascertaining compensation to the owner of property appropriated for public use, he is entitled to its value, for

most profitable use for which it is available, but such availability does not refer to future possibility, but to present capacity which may be anticipated with reasonable certainty.

On principle, this rule would apply to the damaging of property which has not been taken and from the evidence, we are of the opinion that the property owned by the golf company has its greatest value as a golf course. Only about two years elapsed from the time the property was bought for a golf course, and less than two years after the property was completed as a golf course to when the claim was filed in this court, and that was during a period of the greatest depression that this country has ever witnessed.

The respondent admits that as to the Newman, Marsh and Morris lots or tracts appreciable damage has resulted chiefly by reason of complete loss of direct ingress and egress from Bryant Avenue. These are small tracts consisting of from two to four lots with approximately equal frontage of about 100 feet on Roosevelt Road and possessing a depth of 116 to 150 feet. These lots are all portions of sub-divided property within the village of Glen Ellyn, located about one and one-half miles distant from the business section of the village. The Newman property, unimproved, is located in a subdivision known as the First Addition to Roosevelt Garden Home Sites, consisting of 285 lots. This subdivision has been open for a period of twelve years and only 8 lots are improved. The Marsh property, improved by a small frame building, forms a part of a subdivision known as Roosevelt Garden Home Sites, consisting of 557 lots. This subdivision has also been open for a period of twelve years with only 8 lots improved. The Morris property is unimproved and forms a part of a subdivision known as Roosevelt Hills Addition consisting of 298 lots. This subdivision has been open for development for ten years but the record does not disclose that any of the lots are improved. Accordingly, it would seem that all of these subdivisions were of premature development. Combined they consist of 1,130 lots in three subdivisions and only 16 lots are improved, two of these being the Marsh lots. The State argues that when these facts are taken into consideration with the general economic conditions that have prevailed for several years last past, that the real estate experts called by the claimants have greatly

overestimated the fair cash market values of these properties, and that the values fixed on these properties were no doubt based upon inflated values common in subdivisions generally until 1930, and we cannot ignore the State's contention in this regard.

The contention is made by claimants in all of the claims that by reason of the bridge constructed on Roosevelt Road where the same crosses Bryant Avenue, traffic is prevented from driving upon the properties as easily as before, and it is contended that since all the tracts possess a frontage of 100 feet or more on Roosevelt Road such damage or enconvenience is inconsequential.

From the evidence in this case, we are of the opinion, that the value of all of these tracts arise principally from the fact that they front on Roosevelt Road.

In considering the evidence pertaining to the value of the Newman property as of January 1, 1932, having a frontage of 108 feet on Roosevelt Road, at $100.00 per front foot or a total value of $10,800.00, and that after the improvement this property had a value of about $8,640.00, the difference being $2,160.00 or $20.00 per front foot, we are of the opinion that that represents the damage to this property.

The State's witnesses put a value on the Marsh property as of January 1, 1932, prior to the improvement, which property consisted of 100 feet on Roosevelt Road, of the same relative value as the Newman property or $10,000.00, and that this property suffered the same proportionate loss from right of access owing to the lowering of the grade in Bryant Avenue, and that the damage to the fair cash market value of these two lots with a total frontage of 100 feet on Roosevelt Road attributable to the road improvement on Bryant Avenue was the sum of Two Thousand Dollars ($2,000.00). The value of the buildings upon the Marsh property is admitted to have been $1,500.00 prior to the improvement, and the evidence shows that the buildings were worth $1,000.00 after the improvement, the difference of $500.00 representing a reasonable estimate of the cost for moving these buildings back from the front of the lots, and the State recommends an award to this property in the sum of $2,500.00.

In considering the Morris property, the evidence shows and it is admitted by the State that the fair cash market

value of these four lots possessing a total frontage of 105 feet to be $100.00 per front foot or a total value of $10,500.00 as of January 1, 1932, unaffected by the improvement; that one year later it possessed a value of $9,450.00. The damage to these lots directly attributable to the road improvement therefore is $1,050.00. This property was not damaged as greatly as the Marsh and Newman properties by reason of the road improvement because of the fact that these lots are more shallow in depth and because of the existence of a 24 foot strip lying between the east line of the property and the concrete wall on Bryant Avenue.

Claimant's witnesses in fixing the value of the golf club property based their estimate of damage by arbitrarily taking out of the whole tract of 129.5 acres, two tracts, one of which has a corner frontage of 100 feet on Roosevelt Road with a depth of 150 feet along Bryant Avenue, and the other lying immediately to the south, having a frontage of 330 feet on Bryant Avenue and a depth of 100 feet. These tracts apparently have been considered by claimants' witnesses as subdivided property although it does not appear that any part of this 129 acre tract has ever been subdivided. The claimants' witnesses were of the. opinion that the highest and best use for this tract is for subdivision purposes and the State contends that its highest and best use was for golf club purposes, and that the estimate of damages should be based upon the damage which might have resulted to the tract as a whole. In this regard we agree that damages, if any, must be estimated to the whole tract. Some witnesses for the claimants estimated the fair cash market value of the golf tract as of January 1, 1932, prior to the improvement as $900.00 per acre, although only a short time prior to that time it appears that $650.00 per acre was paid for this property, and they also placed the value of this property as of January 1, 1933, after the improvement, as $876.84 per acre, or a total of $113,550.00, there being a difference of about $3,000.00 representing the damage to the golf club tract due to the road improvement on Bryant Avenue, and this would be ample to take care of the cost of constructing a service driveway upon the golf club grounds so as to secure direct access to Bryant Avenue, and it was admitted by all that a new 20 foot concrete pavement on Bryant Avenue, or what

is known as Route No. 53, with the full frontage of the golf course on Route No. 53, which replaced a previous dirt and gravel road, was of direct benefit to the golf course.

Considering the testimony of all the witnesses and the personal inspection of all of this property by the court, and harmonizing this evidence as much as possible, we recommend that the sum of $11,000.00 be paid to Glenbard Golf Club, Inc., Claim No. 1997; the sum of $5,000.00 to Margaret Y. Newman; the sum of $7,000.00 to Robert A. and Dagmar Marsh; and the sum of $4,000.00 to Bridget Morris. An award will be denied in Claim No. 1825.