(No. 47160.–

THE DEPARTMENT OF PUBLIC WORKS AND BUILD-INGS, Appellant, v. WILSON AND COMPANY, INC., Appellee.

*Opinion filed Nov. 25, 1975.—Rehearing denied Jan. 22, 1976.*

132

CREBS, J., took no part.

William J. Scott, Attorney General, of Springfield (Frank S. Righeimer, Jr., Special Assistant Attorney General, of Righeimer, Righeimer, and Martin, of Chicago, of counsel), for appellant.

Foran, Wiss & Schultz, of Chicago (Robert E. Wiss, of counsel), for appellee.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

In this eminent domain proceeding the State's Department of Public Works and Buildings sought to acquire part of a tract of land owned by defendant, Wilson and Company, Inc. That property consisted of a 5.24-acre L-shaped tract in Du Page County with a frontage of 151.2 feet abutting the north side of Roosevelt Road, a four-lane, heavily traveled highway with two lanes for eastbound traffic and two lanes for westbound traffic. The direct access to Roosevelt Road afforded by such frontage was the only access from the tract in question to any public street. Monterrey Avenue was located 240 feet west of the premises and formed a "T" intersection with Roosevelt Road from the north. Route 83 crossed Roosevelt Road on an overpass approximately 1,500 feet east of the premises. The only improvement on the property was an old barn.

The Department instituted this condemnation proceeding to acquire land in connection with construction of an exit ramp from Route 83 to the northern or westbound lanes of Roosevelt Road. The portion of the premises needed was a .55-acre tract ranging from 150 to 200 feet in depth along the property's entire frontage on Roosevelt Road, thus eliminating direct access to Roosevelt Road from the remaining 4.69 acres. In lieu of that direct access the Department proposed to construct a 26-foot-wide, paved frontage road over the .55 acres taken which would run from the west line of defendant's remaining property

approximately 240 feet in a westerly direction to Monterrey Avenue at a point 85 feet north of its intersection with Roosevelt Road. A chain link fence would be constructed between the frontage road and Roosevelt Road to prevent any passage between the two. This frontage road would provide the only means of access from the 4.69 acres to public streets.

Prior to the commencement of the trial of the case before a jury, the Department filed a motion *in limine* "for the entry of an Order pursuant to Supreme Court Rule 218, limiting the testimony of any witness for the landowner in the above matter to prohibit them from considering as an element of their damages, loss of access or change in highest and best use because of the placing of the defendant's property on a frontage road as such action by the State is non-compensable as a matter of law." The motion was denied, and the case proceeded to trial.

An expert appraisal witness for defendant testified that on the basis of various factors including the commercial character of the neighborhood, the availability of utilities, the size, shape, elevation and location of the tract, the zoning and the availability of direct access to Roosevelt Road, the highest and best use of defendant's property prior to the taking would be "for some form of retail use." With respect to the substituted access road he stated that "in my opinion this type of access from what it had previously severely impairs and limits the use of the remainder of the property." He was of the opinion that after the taking the remainder lost its suitability for retail use and that its highest and best use would revert to an industrial use such as "a storage contractor's yard and the like, not relying on direct commercial access." It was his further opinion the fair cash market value of the remainder as a part of the whole prior to the taking was $164,000 and that its value after the taking was $100,000.

The Department made an offer of proof that its expert witness would testify that there was no damage to

the remainder if the loss of direct access to Roosevelt Road and the substitution of the frontage road were not taken into account. The trial court sustained defendant's objection to the offer of proof, and the Department offered no further evidence.

On defendant's motion the trial court then directed a verdict in the amount of $21,400 as stipulated damages for the land taken, and $64,000 for damages to the remainder in accordance with the evidence presented by defendant, and entered judgment accordingly. On appeal by the Department from that part of the judgment awarding damages to the remainder, the appellate court affirmed (22 Ill. App. 3d 302), and we granted leave to appeal.

The only real issue presented is whether the trial court erred in denying the State's motion *in limine* and permitting proof concerning damages to the land not taken as a result of the loss of direct access to Roosevelt Road.

The question of a property owner's right to compensation for loss of direct access rights when the street or highway upon which his property abuts is changed to a limited-access highway thus restricting him to the use of frontage roads or other indirect means of ingress and egress to and from his property is one as to which very little unanimity can be found in the substantial number of decisions in other States which have considered this question. (See Annot., *Abutting Owner's Right to Damages for Limitation of Access Caused by Conversion of Conventional Road into Limited-Access Highway*, 42 A.L.R.3d 13 (1972); Nichols, The Law of Eminent Domain sec. 14.2431 (J. Sackman rev. 3d ed. 1974).) Some jurisdictions apply the rule that an abutting property owner is not entitled to damages if he is given access to a frontage road which in turn affords him "reasonable" access to the main system of public roads. (*E.g., State ex rel. State Highway Com. v. Lavasek* (1963), 73 N.M. 33, 385 P.2d 361; *Arkansas State Highway Com. v. Bingham* (1960), 231 Ark. 934, 333 S.W.2d 728; *Brock v. State*

*Highway Com.* (1965), 195 Kan. 361, 404 P.2d 934; *Haymore v. North Carolina State Highway Com.* (1972), 14 N.C. App. 691, 189 S.E.2d 611.) Property owners who have been placed on frontage roads and required to travel as far as 2½ miles to the nearest entrance to the highway they previously had direct access to have been determined to have reasonable access within the above rule. (*E.g., Stefan Auto Body v. State Highway Com.* (1963), 21 Wis. 2d 363, 124 N.W.2d 319.) Either explicitly or implicitly, these decisions are premised on the conclusion that a property owner's right of access does not encompass direct access to an abutting highway. (*State ex rel. Herman v. Schaffer* (1970), 105 Ariz. 478, 467 P.2d 66.) The contrary view is that a property owner with direct access to an abutting highway is entitled to compensation when his existing free and convenient access is taken or substantially impaired. (*E.g., People v. Ricciardi* (1943), 23 Cal. 2d 390, 144 P.2d 799; *State ex rel. Department of Highways v. Linnecke* (1970), 86 Nev. 257, 468 P.2d 8; *McMoran v. State* (1959), 55 Wash. 2d 37, 345 P.2d 598.) The fact that a frontage road has been provided bears not on the question of compensability but is relevant in mitigation of damages resulting from the elimination of the existing direct access.

It is the Department's contention that under existing Illinois law any damages resulting from elimination of direct access to Roosevelt Road and the substitution of the frontage road therefor was *damnum absque injuria* created by the proper exercise of the State's police power to regulate traffic and provide safety on the public highways. It is further contended that the State should be able to substitute reasonable indirect access for loss of direct access to an adjoining highway without being liable for compensatory damages. Before turning to a discussion of the Illinois precedent relied upon by the Department for these contentions, it is appropriate to review the constitutional context in which this issue must be decided.

Section 15 of article I of the 1970 Constitution provides: "Private property shall not be taken or damaged for public use without just compensation as provided by law. Such compensation shall be determined by a jury as provided by law." Insofar as is pertinent for the questions raised on this appeal, the 1970 Constitution carries forward the provisions of the 1870 Constitution without any change in substance. The 1870 Constitution (art. II, sec. 13) had, however, added the words "or damaged" which did not appear in the 1848 Constitution (art. XIII, sec. 11). In *Rigney v. City of Chicago* (1881), 102 Ill. 64, 74-75, this court considered the effect of that addition, saying:

> "This [earlier] construction making an actual physical invasion of the property affected, the test in every case, excluded from the benefits of the constitution many cases of great hardship, for, as in the present case, it often happened that while there was no actual physical injury to the property, yet the approaches to it were so cut off and destroyed as to leave it almost valueless. Under this condition of affairs the framers of the present constitution, doubtless with a view of giving greater security to private rights by affording relief in such cases of hardship where it had before been denied, declared therein that 'private property shall not be taken *or damaged* for public use without just compensation.' The addition of the words 'or damaged,' can hardly be regarded as accidental, or as having been used without any definite purpose. On the contrary, we regard them as significant, and expressive of a deliberate purpose to change the organic law of the State."

Further elaborating the court said:

> "Under the constitution of 1848 it was essential to a right of recovery, as we have already seen, that there should be a direct physical injury to

the *corpus* or subject of the property, such as overflowing it, casting sparks or cinders upon it, and the like; but under the present constitution it is sufficient if there is a direct physical obstruction or injury to the right of user or enjoyment, by which the owner sustains some special pecuniary damage in excess of that sustained by the public generally, which, by the common law, would, in the absence of any constitutional or statutory provisions, give a right of action." (102 Ill. 64, 78.)

*Rigney,* which involved a plaintiff's claim for damages for loss of access to his property resulting from the construction of a viaduct, was followed by a line of cases which have consistently indicated that a property owner has a valuable property right of access to streets adjoining his property which cannot be taken away or materially impaired without just compensation. (*E.g., Department of Public Works and Buildings v. Mabee* (1961), 22 Ill.2d 202, 205; *Ryan v. Rosenstone* (1960), 20 Ill.2d 79, 82; *Department of Public Works and Buildings v. Wolf* (1953), 414 Ill. 386, 389; *R. G. Lydy, Inc. v. City of Chicago* (1934), 356 Ill. 230, 240; *Illinois Malleable Iron Co. v. Commissioners of Lincoln Park* (1914), 263 Ill. 446, 451; *City of Chicago v. Spoor* (1901), 190 Ill 340, 347; *Hohmann v. City of Chicago* (1892), 140 Ill. 226, 231; *City of Chicago v. Union Building Association* (1882), 102 Ill. 379, 397.) It is clear from the foregoing cases and others that a property owner suffers compensable damages if his access to an abutting street is completely eliminated. The precise question, however, is the effect of substituted indirect access via a frontage road, and that question does not appear to have been squarely ruled upon by this court. However, it has been implicitly recognized that the substitution of a frontage road for previously existing direct access does not preclude an award of compensation but instead is a fact to be considered in determining the

extent of damages. *Department of Public Works and Buildings v. Divit* (1962), 25 Ill.2d 93; *Department of Public Works and Buildings v. Anastoplo* (1958), 14 Ill.2d 216.

Not every limitation of access is compensable. It has been held that a property owner is not entitled to damages resulting from the vacation of a street in a block other than that in which his property is situated where his free access is not impaired even though the closing of the street in the other block may result in inconvenience and circuity of travel. (*City of Chicago v. Union Building Association; City of East St. Louis v. O'Flynn* (1887), 119 Ill. 200; *Guttery v. Glenn* (1903), 201 Ill. 275.) In such cases the inconvenience to the property owner is deemed to be no different in kind than that experienced by the public in general as distinguished from the closing of a street in front of the abutting owner's property which leaves it on a "blind-court." (*City of Chicago v. Burcky* (1895), 158 Ill. 103; *Village of Winnetka v. Clifford* (1903), 201 Ill. 475.) Similarly, a property owner has no property right in the flow of traffic along the street which abuts his premises (*Mabee*); nor, if his right of access is not materially impaired, can he complain of public improvements which either accelerate traffic flow (*Spoor*) or have the effect of diverting traffic to other avenues (*Hohmann*). Likewise, restrictions on the types of vehicles which may use an abutting highway (*Illinois Malleable Iron Co.*) and traffic control devices and regulations such as one-way streets and center-line medians, which do not preclude access from the abutting property but only limit the direction of travel, do not entitle the abutting property owner to damages (*Mabee*). The significance of the retention of direct access to the abutting highway in these cases is apparent.

The decisions thus indicate that the "right of access" with which we are here concerned is a private property right inherent in ownership of real estate abutting a highway. When such access is taken or materially impaired

by action of the State the property owner is entitled to compensation. If, however, there is no physical disturbance of the right of access *vis-a-vis* the abutting highway, then any damages which may result to the property owner as a consequence of a change in the use of the highway by the public are *damnum absque injuria* even though such damages may be very substantial. This distinction can be illustrated by a rather common situation which occurs when a limited-access highway is constructed in a new location leaving a property owner's place of business still fronting as it was before on the old highway which has become a secondary road or access road for the new highway. In such a case there can be no question that serious economic consequences may result to the property owner, and it is quite possible that the highest and best use of his property would be changed. However, the fact remains that the existing access to the abutting roadway is unaffected. It is only the nature of the public's use of the highway which has changed. The consequential damages which occur do not result from any taking or material impairment of existing access rights but solely from the State's exercise of its police power to regulate and control traffic on the highways. For a discussion of this concept and a review of pertinent decisions see Sackman, *Access— A Reevaluation,* 1973 Instit. on Planning, Zoning and Eminent Domain, p. 335; Stubbs, *Access Rights of An Abutting Landowner,* 5th Annual Institute on Eminent Domain (1963), p. 59.

There is some divergence among the States as to whether the issue of materiality of impairment of access is a question of law or fact. (See cases collected at 42 A.L.R.3d 13, 71-75 (1972).) In our opinion, the better view is that it is a question of law for the court to determine in the first instance whether there has been an actionable taking or material impairment of access which entitles the property owner to compensation. (*E.g., People v. Ricciardi* (1943), 23 Cal. 2d 390, 144 P.2d 799; *Brock*

*v. State Highway Com.* (1965), 195 Kan. 361, 404 P.2d 934.) It is then for the jury to determine the extent of damages which have resulted.

The cases relied upon by the Department in support of its contention that the elimination of all direct access to Roosevelt Road and the substitution of the frontage road is a noncompensable restriction imposed in the exercise of the State's police power to regulate traffic on the highways are all distinguishable from the case before us. In *Ryan,* the trial court ordered the issuance of a mandatory injunction to compel the removal of an insurmountable median which had been installed on the highway in front of an abutting owner's commercial property and which had the effect of limiting access to the northbound lanes of traffic while not disturbing access to the southbound lanes. We reversed, holding that, under the facts of that case, the installation of the median as a traffic control device was not an unreasonable interference with access rights. It is evident that *Ryan* did not involve elimination of all direct access to the abutting highway, nor did it involve the question of damages in an eminent domain proceeding. *Mabee* involved condemnation of a portion of the abutting property and the installation of an insurmountable median which restricted access from the remainder of the property to only one lane of the highway. This court concluded that the trial court had erred in instructing the jury that it could consider the reduced value of the property resulting from construction of the insurmountable median and in permitting the property owner's witnesses to testify to the reduced value caused by the divider. The court observed that the rule that the right of access to an existing public street or highway is a valuable property right which cannot be taken away or materially impaired without just compensation "cannot be applied, however, where the property owner's free and direct access to the lane of traffic abutting on his property has not been taken or impaired." (*Department of*

*Public Works and Buildings v. Mabee* (1961), 22 Ill.2d 202, 205.) The Department also relies on various other decisions of this court and the appellate court holding that a property owner may not recover damages as a consequence of either increased or decreased flow of traffic along the abutting highway caused by public improvements or traffic regulations. (*Spoor; O'Flynn; Union Building Association; Department of Public Works and Buildings v. Bloomer* (1963), 28 Ill.2d 267; *Department of Public Works and Buildings v. Bills* (1965), 66 Ill. App. 170; *Calumet Federal Savings and Loan Association v. City of Chicago* (1940), 306 Ill. App. 524; *C. Hacker Co. v. City of Joliet* (1915), 196 Ill. App. 415.) Again, none of those cases was concerned with the elimination of direct access to all lanes of traffic on the highway abutting the property as contrasted with the circumstances in this case.

The Department also places reliance on the provisions of section 4—210 of the Illinois Highway Code, which provides in part: "Except where the right of access has been limited by or pursuant to law every owner or occupant of property abutting upon any State highway shall have reasonable means of ingress from and egress to the State highway consistent with the use being made of such property and not inconsistent with public safety or with the proper construction and maintenance of the State highway for purposes of travel, drainage and other appropriate public use." (Ill. Rev. Stat. 1973, ch. 121, par. 4—210.) That section goes on to authorize the Department of Transportation to adopt reasonable and necessary rules, regulations and specifications covering entrance and exit driveways serving various types of properties abutting on State highways and for the issuance of permits for the construction of such driveways. That section clearly recognizes an abutting owner's right to reasonable ingress and egress to and from abutting highways, except as limited by law; it does not purport to authorize complete elimination of all direct access and the substitution of

indirect access via a frontage road in an eminent domain proceeding without the payment of compensation. That provision is not determinative of the questions before us.

We do not agree with the Department's suggestion that the frontage road in this case was a traffic control device of the same character as the median dividers in *Ryan* and *Mabee*. Here, the effect of the partial taking was not merely a limitation of the existing direct access to Roosevelt Road nor simply a change in the flow of traffic on the street, but rather a complete elimination of all direct access with the substitution of a frontage road connecting defendant's remaining property to another street which intersected with Roosevelt Road. Nor do we agree with the contention urged by the Department in support of its motion *in limine* that the construction of the frontage road to serve defendant's remaining property eliminated, as a matter of law, any damages for loss of the direct access rights. As indicated above, the rule is that if there has been a taking or material impairment of access, then it is appropriate for the jury to consider that fact in determining the extent of damages to the remainder in an eminent domain proceeding. This does not, of course, mean that every loss or material impairment of direct access to abutting highways automatically results in compensable damage to the remaining property. Whether any compensable damage has occurred will ordinarily depend, in large measure, upon the substitute access provided. It may well be that in some cases the substitute access by means of a frontage road or otherwise will so nearly equal the original direct access as to eliminate any question of damages to the remaining property. As we earlier indicated, that issue is for the trial court initially. In the more usual case, however, that question will go to the extent of damages and not to the right to compensation in the first instance.

We conclude, therefore, that the trial court did not err in denying the motion *in limine* to prohibit the introduc-

tion of evidence to determine whether or not a material impairment of access had occurred with respect to the property in question. The testimony which was adduced on this question together with the physical facts relating to access before and after the taking lead to the inevitable conclusion that the partial taking which occurred here did result in a material impairment of existing direct access rights within the purview of the prior decisions of this court referred to earlier. Accordingly, the trial court properly permitted the jury to consider loss of direct access to Roosevelt Road and the substitution of the frontage road as factors bearing on the extent of damages to the remainder. We agree with the trial and appellate courts that the award in this case was based on compensable elements of damage.

Since the only competent evidence concerning damages to the remainder submitted to the jury was that of defendant's expert witness, it was proper for the court to direct a verdict on that issue consistent with testimony of that witness. *City of Chicago v. Riley* (1959), 16 Ill.2d 257.

Accordingly, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE CREBS took no part in the consideration or decision of this case.