THE DEPARTMENT OF TRANSPORTATION, Petitioner-Appellee, *v.* ASSOCIATION OF FRANCISCAN FATHERS OF THE STATE OF ILLINOIS, Respondent-Appellant.—ASSOCIATION OF FRANCISCAN FATHERS OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* THE DEPARTMENT OF TRANSPORTATION *et al.*, Defendants-Appellees.

Second District   Nos. 79-509, 79-831 cons.

Opinion filed March 3, 1981.

James D. Murphy, Jr., and Richard T. Ryan, both of Chicago, for appellant.

Tyrone C. Fahner, Attorney General, of Chicago (Leo N. Cinquino, Special Assistant Attorney General, and Frank S. Righeimer, Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE REINHARD delivered the opinion of the court:

In April 1970, the Department of Public Works and Buildings, now the Department of Transportation (Department), filed a petition to condemn 9.828 acres of a 235-acre tract owned by the Franciscans in Oak Brook, Illinois. The land which the Department sought to condemn was needed to complete a reconstruction project for Route 83 in the area of the Franciscan property. The Franciscan property is bounded by 31st Street on the north, 35th Street on the south, Route 83 on the east and Midwest Road on the west. Thereafter, the Department filed a motion for immediate vesting of title, and the Franciscans filed a traverse and motion to dismiss. The Du Page County circuit court granted the Department's

motion for immediate vesting of title and denied the Franciscans' traverse and motion to dismiss. The court found the preliminary just compensation to be $196,500 and granted the Franciscans leave to file a cross-petition for damage to the remainder. On July 10, 1970, the Franciscans filed a cross-petition for damage to the remainder and a notice of appeal from the "quick-take" proceedings. On January 24, 1972, the appellate court dismissed the appeal. 3 Ill. App. 3d 503, 278 N.E.2d 111.

In March 1972, the Department filed a petition to condemn the Franciscans' access rights along Route 83. The trial court originally consolidated the two petitions for trial but subsequently vacated that order. The original condemnation suit proceeded to trial on December 4, 1972, and judgment was entered on the jury verdict of $196,560 for the 9.828 acres taken and $22,575 for damage to the remainder. The Franciscans appealed and this court reversed and remanded (44 Ill. App. 3d 49, 360 N.E.2d 70), finding that the trial court erred in instructing the jury on the issue of the reasonable probability of rezoning. The Illinois Supreme Court affirmed the appellate court. 69 Ill. 2d 308, 371 N.E.2d 616.

On October 23, 1978, the trial court entered an order dismissing the 1972 access rights case and, finding that the Department could have chosen to litigate the access rights issue under the original petition by virtue of the Franciscans' cross-petition for damage to the remainder, ruled that evidence regarding compensation for loss of access rights would be allowed as relevant to the issue of damage to the remainder on retrial. Thereafter, the Department filed a demand for a bill of particulars relating to damages to the remainder. The Franciscans were ordered to respond to the bill of particulars and in their answer specified that their claim of damage to the remainder was based on loss of direct access to Route 83 and 31st Street.

At the second trial, which the present appeal concerns, the Franciscans presented testimony from several appraisal witnesses and land planners. The testimony of those witnesses was reasonably consistent in concluding that the highest and best use of the Franciscan property was a commercial area in the northeast corner of the property with the balance consisting of a mix of residential uses. The valuations of the Franciscans' witnesses ranged from $635,000 to $856,000 on the 9.828 acres taken and from $200,000 to $750,000 on the damage to the remainder. The Department's witnesses testified that the highest and best use of the subject property was residential and their valuations ranged from $157,248 to $191,650 on the part taken with no damages to the remainder. The jury awarded the Franciscans $200,000 as compensation for the land taken but awarded nothing for damage to the remainder. Judgment was entered on the verdict, and from this the Franciscans pursued this appeal.

These issues are presented for review:

(1) Whether the trial court erred in permitting the question of access rights to be litigated in this action;

(2) Whether the trial court erred in refusing to rule as a matter of law that there was an actionable taking or material impairment of access entitling the Franciscans to compensation;

(3) Whether the jury was properly instructed;

(4) Whether the trial court abused its discretion in ruling on comparable sales;

(5) Whether the Franciscans were entitled to compensation for 18.086 acres of land taken rather than 9.828 acres;

(6) Whether the trial court erred in its rulings relating to the testimony of witnesses.

## I.

The Franciscans set forth the following argument: The original petition to condemn filed in 1970 did not seek to condemn access rights to Route 83, but only sought to condemn the land itself and only with the filing of the 1972 suit did the Department explicitly seek condemnation of the Franciscans' access rights. When the trial court permitted the Department to acquire the access rights on retrial of the 1970 suit without a refiling of the access rights case and without an amendment to the pleadings in the 1970 case, the Department, in effect, was able to acquire those rights at a valuation date more than 2 years prior to the date it first sought to obtain them. Further, the Franciscans argue that the action of the trial court in permitting the issue of access rights to be litigated in the 1970 case is not supported by the earlier decisions in this case. For example, in reviewing the first trial in this case, the court said:

"While the trial court originally ordered these two actions consolidated, he later vacated this order and ordered that the two cases be tried separately. Thus, it would appear that the value of the lost access rights was not properly before the jury in this case * * *." (44 Ill. App. 3d 49, 51, 360 N.E.2d 70, 72.)

Also, our supreme court noted:

"It appears, as the appellate court found, that the question of access rights was not before the jury, although a review of the record shows that some witnesses had considered this in their testimony as to damage to the remainder. The trial court may wish to consider that in order to serve the orderly administration of justice and to avoid additional costs, the two petitions be consolidated and the question of access rights be considered as well on remand." 69 Ill. 2d 308, 312-13, 371 N.E.2d 616, 617.

The Department on the other hand points to this court's first opinion (on review of the "quick-take" proceedings) which indicated that the issue of access rights could be litigated through the Franciscans' cross-petition:

"[T]he order of the trial court provided that the defendant could file a cross-petition for damage to the remainder. The record before us shows that the defendant has filed such a petition and that it is pending. Defendant may raise the issue of compensation for damage to the remaining property by the loss of access rights at this stage of the proceedings, since loss of such rights can be an element of damages to the remainder." (3 Ill. App. 3d 503, 505, 278 N.E.2d 111, 113.)

Further, the Department argues that the question of access rights was properly before the court for one or more of the following reasons: the bill of particulars filed by the Franciscans in the 1970 suit specifies loss of access as an element of their claim for damage to the remainder; the jury heard evidence *from both parties* regarding loss of access rights; the trial court acted at the suggestion of the supreme court in incorporating the access issue into the original action; and the 1970 petition actually raises the issue of access rights when it states that "direct access will not be permitted to or from abutting property and said Freeway."

The Franciscans do not cite any authority for the proposition that after dismissal of the 1972 access rights case, the Department either should have been required to refile the case or amend the pleadings in the 1970 suit if they still wished to litigate the question of access rights. While there are numerous Illinois decisions regarding compensation for loss of access rights, none appear to provide any exclusive method of litigating such rights, nor have any had that procedural question for determination. For example, the issue of damage to property due to loss of access has been litigated in the court of claims in actions brought by landowners, as well as in eminent domain actions as an element of damage to the remainder. In this case, the supreme court earlier suggested consolidating the two petitions so that the question of access rights could be considered along with the original petition for condemnation. This court at one time suggested that the loss of access rights be considered as an element of damage to the remainder and litigated through the Franciscans' cross-petition. Regardless of the method used to get the issue of access rights before the jury, the Franciscans had a full and fair opportunity to present that issue, both through expert testimony and argument, to the jury. It is, therefore, difficult to understand how the Franciscans were prejudiced by the trial court's order of October 23, 1978, permitting the issue of loss of access rights to be considered in the original suit. They, apparently, feel that the access rights should have been valued separately since the access

rights case was not filed until two years after the filing of the condemnation suit. However, the jury's verdict was that there was no damage to the remainder and they were instructed to consider loss of access as an element of damage to the remainder. Therefore, the valuation date of the access rights could have no significance. Finally, the bill of particulars filed by the Franciscans specified loss of access as an element of alleged damage to the remainder in the cross-petition in the 1970 suit, thus providing a clear basis for litigating that issue in the original suit.

## II.

The Franciscans filed a written motion at the close of their case requesting a determination by the trial court as a matter of law as to whether or not there was an actionable taking of material impairment of access entitling the Franciscans to compensation. The trial court denied the motion. The Franciscans urge that the trial court's refusal to make that determination is contrary to the Illinois Supreme Court's decision in *Department of Public Works & Buildings v. Wilson & Co.* (1975), 62 Ill. 2d 131, 340 N.E.2d 12, wherein the court stated:

"In our opinion, the better view is that it is a question of law for the court to determine in the first instance whether there has been an actionable taking or material impairment of access which entitles the property owner to compensation. (E.g., *People v. Ricciardi* (1943), 23 Cal. 2d 390, 144 P.2d 799; *Brock v. State Highway Com.* (1965), 195 Kan. 361, 404 P.2d 934.) It is then for the jury to determine the extent of damages which have resulted." (62 Ill. 2d 131, 141-42, 340 N.E.2d 12, 17.)

"As indicated above, the rule is that if there has been a taking or material impairment of access, then it is appropriate for the jury to consider that fact in determining the extent of damages to the remainder in an eminent domain proceeding. This does not, of course, mean that every loss or material impairment of direct access to abutting highways automatically results in compensable damage to the remaining property. Whether any compensable damage has occurred will ordinarily depend, in large measure, upon the substitute access provided. It may well be that in some cases the substitute access by means of a frontage road or otherwise will so nearly equal the original direct access as to eliminate any question of damage to the remaining property. As we earlier indicated, that issue is for the trial court initially. In the more usual case, however, that question will go to the extent of damages and not to the right to compensation in the first instance." (62 Ill. 2d 131, 144, 340 N.E.2d 12, 18-19.)

The Franciscans also rely on this court's decision in *City of Rockford v.*

*Robert Hallen, Inc.* (1977), 51 Ill. App. 3d 22, 366 N.E.2d 977. We do not, however, share the Franciscans' interpretation of *Wilson* and *Hallen*. Rather, we believe that the following approach is both mandated by the supreme court's decision in *Wilson* and consistent with the traditional functions performed by the trial judge and the jury in our system.

■■ The trial judge is required to make an initial determination as a matter of law as to whether a limitation of access has resulted from any taking or material impairment of a property right, which may be compensable, or whether the limitation of access has resulted solely from the State's exercise of its police power to regulate and control traffic on the highways, which is noncompensable. The distinction between the two is that an actionable taking of a property right arises only where there is a physical disturbance of the right of access vis-a-vis the abutting highway of one owning real estate abutting the highway. (*Wilson*, at 141.) For example, a limitation of access arising from traffic control devices and regulations, such as one-way streets and center-line medians, is noncompensable as a matter of law since the abutting landowner is not deprived of direct access to the abutting highway. *Wilson*, at 140.

■■ If the trial court determines as a matter of law that the limitation of access has arisen from exercise of the State's police power to regulate and control traffic, then no evidence should be admitted regarding damage to the remainder from loss of access. However, where the trial court determines as a matter of law that a limitation of access has arisen from State action, other than exercise of the police power to regulate and control traffic, resulting in a taking or material impairment of access, the jury is then permitted to hear evidence regarding damage to the remainder through loss of access. The jury then, as the finder of fact, must decide whether the actionable taking is also compensable, which in large part will turn on the quality of substitute access provided. Only in one instance will the jury be deprived of deciding the issue of compensability, where the substitute access so nearly equals the original direct access as to eliminate any question of damages to the remaining property. (*Wilson*, at 144.) In that rare case, the trial court could rule as a matter of law that the landowner is not entitled to compensation even though there has been an actionable taking. In all other cases, where the trial court has determined that there is an actionable taking, the jury is to decide the issue of compensation, including the question of whether the substitute access provided has mitigated or even eliminated damage to the remainder. " '* * * As in any other condemnation case, whether there is a taking of a property right is a question of law, and must be decided by the court.* * *' " (*Brock v. State Highway Com.* (1965), 195 Kan. 361, 366, 404 P.2d 934, 940.) "As to how much the service roads would mitigate the damage, i.e., how much would be the net damage, [is] a question of fact

for the jury." (*People v. Ricciardi* (1943), 23 Cal. 2d 390, 403-04, 144 P.2d 799, 806.) While it may be rare, it is possible for the jury to conclude, as it did herein, that the net damage is zero. *Wilson* does not preclude such a result.

■■ This court's prior opinion in *City of Rockford v. Robert Hallen, Inc.* (1977), 51 Ill. App. 3d 22, 366 N.E.2d 977, does not compel us to reach an opposite conclusion. In that case the court was concerned primarily with the apportionment of a condemnation award among various parties with interests in the condemned property. While the decision does address *Wilson*, it is not authority for the proposition that the trial court is required to rule in all cases as a matter of law whether the landowner is entitled to compensation for a material impairment of access. Nor can it be said that *Hallen* requires a jury to find that the landowner is entitled to compensation where there is a material impairment of access. (See also *Department of Public Works v. Sun Oil Co.* (1978), 66 Ill. App. 3d 64, 383 N.E.2d 634.) Where the trial judge rules as a matter of law that there is a material impairment of access, it is the function of the jury to decide what, if any, compensation the landowner is entitled to.

Therefore, under the facts of the present case, we cannot say that the trial court erred in permitting the jury to make the factual determinations as to the extent of damages. While the trial court could have been more explicit in its rulings in this regard, it seems evident that he concluded there was a material impairment of access which warranted giving the matter to the jury.

### III.

■■ The Franciscans argue that the trial court erred in refusing their tendered instructions referring to the jury's right to value the part taken as a separate and distinct piece of property, rather than as a part of the whole tract. However, as the Department correctly points out in its brief, a jury instruction will not be given where there is no evidence in the record to support the giving of the instruction. (*Probus v. Brown* (1975), 33 Ill. App. 3d 639, 641; *Wells v. Gulf, Mobile & Ohio R.R. Co.* (1967), 82 Ill. App. 2d 30, 40.) The only valuation theory presented by the Franciscans at trial was based on the land taken as part of the whole. None of the expert witnesses valued the part taken as a separate tract or testified that the part taken had a greater value as a separate tract than as part of the whole. Therefore, there is no basis in the evidence for the Franciscans' tendered instruction, and it was rightfully denied by the trial court.

### IV.

The Franciscans argue that the trial court erred in refusing to allow as a comparable sale the sale to an oil company of a 3/4-acre parcel at the

southwest corner of Route 83 and 35th Street 10 days after the filing of the 1970 condemnation petition, while permitting as a comparable sale the sale of the so-called Healy Farm, a 601-acre tract located immediately to the south of the Franciscans' property.

■■ "The admission of comparable sales is a matter that lies within the sound discretion of the trial court which will not be reversed save for abuse." (*Forest Preserve District v. Kelley* (1979), 69 Ill. App. 3d 309, 318, 387 N.E.2d 368, 375.) Regarding the sale of the parcel at the southwest corner of Route 83 and 35th Street to Amoco for service station use, it cannot be said that the trial court abused its discretion in excluding this sale as a comparable. The sale of that parcel occurred after the petition to condemn was filed herein, and the trial court was concerned that the sale price may have been affected by the filing of the petition to condemn, especially since the site sold to Amoco would be the first property south of the interchange being constructed.

■■ Regarding the Healy Farm sale, it would be difficult to conclude that the trial court abused its discretion in allowing the sale as a comparable. The major objections made by the Franciscans to this comparable are the size (over 2½ times as large as the Franciscans' tract) and the date of sale (5 years before the petition to condemn was filed herein). The Franciscans, however, cite no authority to support their position that the Healy Farm should not have been allowed as a comparable sale. In fact, their position with regard to the Healy Farm sale is inconsistent with their position toward another comparable which they introduced. The Franciscans presented evidence regarding the sale of a one-acre tract (less than one-ninth the area taken herein) in 1966 (4 years prior to the petition to condemn being filed). In short, absent some showing of prejudice or citation of case authority to support their position, we cannot agree with the Franciscans' argument that the trial court erred in its decision regarding comparable sales.

## V.

The original petition to condemn described the land sought to be acquired as "[c]ontaining therein 18.086 acres, more or less, of which 8.258 acres, more or less, were previously dedicated for public highway purposes." The 8.258 acres described were dedicated to the State by the Franciscans in 1931 for construction of Route 83. On April 26, 1972, the Franciscans allegedly notified the Department that they were revoking the original dedication. On January 2, 1979, the Franciscans filed a complaint to revoke the 1931 dedication and a petition for *mandamus* to compel the Department to pay just compensation for the previously dedicated land. On February 28, 1979, the trial court granted the Department's motion to dismiss that case, finding that the court lacked

jurisdiction to hear the matter. On March 26, 1979, the Franciscans filed a notice of appeal and on July 27, 1979, the trial court dismissed the appeal "pursuant to Supreme Court rules." (Apparently, the Franciscans failed to file the record on appeal.) On August 24, 1979, the Franciscans filed a notice of appeal from the July 27, 1979, order dismissing their appeal and from the February 28, 1979, order dismissing the *mandamus* action. Numerous other motions were filed by the Department to dismiss the appeal, but this court ruled on November 1, 1979, that it would take notice of the Franciscans' notice of appeal and assume jurisdiction, without prejudice to any objections which may be made in the appellate court, and the motion to strike the record filed on appeal and response thereto was ordered taken with the case. On January 22, 1980, this court consolidated that appeal, Gen. No. 79—509, with the appeal on the original condemnation suit, Gen. No. 79—831, on motion of the Franciscans. However, neither party made further reference to this issue in their briefs, nor were separate briefs filed in the appeal from the *mandamus* dismissal. While the Franciscans do make brief mention of the *mandamus* action in their brief under the "Nature of the Case" and "Statement of Facts," under "Issues Presented" they merely state, "When the Department proposes to extinguish rights of access, should the landowners be compensated for the full 18 acres acquired?" All other issues raised in their brief relate only to their appeal in the condemnation suit in Gen. No. 79—831.

■■ What the Franciscans do argue, however, on this point in their brief is that "[a]fter the dismissal of the Mandamus action * * * the issue was still before the trial court in that the original condemnation suit for the fee describes a full 18.086 acres of land * * *" and"[t]here was never a ruling on the merits of the Mandamus action * * * or the right to revoke the dedication; and therefore, the dismissal of the appeal in the Mandamus action, if upheld, is not an estoppel to a determination of this issue in this appeal." However, the position taken by the Franciscans now is not supported by the trial court record. Nowhere in the record is there any testimony, or even an offer of proof, by the Franciscans regarding revocation of their prior dedication or that the taking was actually 18.086 acres rather than 9.828 acres. In fact, the record is replete with evidence from the Franciscans that the taking was 9.828 acres. Therefore, the Franciscans are barred from arguing this point on appeal in the condemnation suit since "a party may not urge for the first time on appeal, and for the purposes of overturning the decision below, an argument or theory which was not presented to the trial court." *First National Bank & Trust Co. v. Rockford* (1977), 47 Ill. App. 3d 131, 137, 361 N.E.2d 832, 837.

■■ What we must further consider is whether the Franciscans have complied with Supreme Court Rule 341 (Ill. Rev. Stat. 1979, ch. 110A, par.

341) in order to preserve their appeal from the dismissal of the *mandamus* action. In their brief there is neither argument nor analysis presented to us discussing the dismissal of their pleadings which were the basis of their cause of action in *mandamus* for which they now seek our review. Their only argument addressing the issue of the dismissal of the *mandamus* action is contained in three sentences which, in effect, state that the supreme court has allowed *mandamus* against the State of Illinois in two condemnation cases. No attempt is made to relate those cases to the pleadings of this case, nor is there any other discussion in the Franciscans' entire brief or during oral argument as to the merits of their pleadings. It is apparent to us that the Franciscans did not intend for us to review the *mandamus* action; otherwise, they would have presented that appeal to us in the same competent fashion that their condemnation suit was prepared. As stated in *47th & State Currency Exchange, Inc. v. B. Coleman Corp.* (1977), 56 Ill. App. 3d 229, 232, 371 N.E.2d 294, 297:

> "Rule 341(e) is not an arbitrary exercise of the supreme court's supervisory powers. Its purpose is to require parties to proceedings before a reviewing court to present clear and orderly arguments for that court's consideration.
>
> Briefs are for the benefit of the reviewing court. They should be prepared in accordance with the applicable supreme court rule. They should follow the sequence set forth in the rule to the end a reviewing court may properly ascertain and dispose of the issues involved. 2 Ill. L. & Prac. *Appeal and Error* §553 (1953); *Quinn v. Larson* (2d Dist. 1966), 77 Ill. App. 2d 240, 245, 222 N.E.2d 239."

Accordingly, for failure to comply with Supreme Court Rule 341, the appeal in Gen. No. 79-831 will be dismissed. (See *In re Marriage of Snow* (1980), 81 Ill. App. 3d 1148, 401 N.E.2d 1352; *47th & State Currency Exchange, Inc. v. B. Coleman; In re Estate of Kunz* (1972), 7 Ill. App. 3d 760, 288 N.E.2d 520.) This disposition makes unnecessary any further consideration of the motion pending before us to strike the record on appeal in this cause.

### VI.

■■ Finally, the Franciscans contend that certain evidentiary errors occurred which require reversal. They argue, first of all, that the trial court erred in striking the testimony of one of their witnesses, Daniel O'Leary. However, since O'Leary admitted in his testimony that he had valued the buildings and land separately to arrive at a total value, his testimony was properly stricken. *Department of Public Works & Buildings v. Lotta* (1963), 27 Ill. 2d 455, 457, 189 N.E.2d 238.

■■ Next, the Franciscans contend generally that portions of the testimony of the Department's valuation witnesses ignored the value of buildings on

the remainder, that the trial court erred in permitting the Department to cross-examine H. James Hestrup regarding an informal meeting that he had with certain Oak Brook officials concerning the Franciscan property after the petition for condemnation had been filed and the trial court erred in permitting the Department to introduce evidence regarding commercial properties without direct access to abutting streets, while denying to it the opportunity to introduce evidence regarding what was paid for the acquired access rights. The Franciscans have failed to cite authorities in support of these arguments as required by Supreme Court Rule 341(e)(7) (Ill. Rev. Stat. 1979, ch. 110A, par. 341(e)(7)). Failure to do so results in a waiver of those issues. *Thomas v. Police Board* (1980), 90 Ill. App. 3d 1101, 414 N.E.2d 11; *Flynn v. Vancil* (1968), 41 Ill. 2d 236, 242 N.E.2d 237.

Nonetheless, we have examined the voluminous record and find that the Department's witnesses did consider the existence of the building in their valuation opinions, that objections to any improper cross-examination of Hestrup were sustained by the trial judge, and cross-examination testimony eliciting other commercial developments on frontage roads without direct access to Route 83 or roads they abut was relevant to the issues.

Accordingly, for the reasons above stated, the judgment of the circuit court entered on the jury verdict is affirmed.

Affirmed.

VAN DEUSEN and NASH, JJ., concur.