(No. 86-CC-3448—)

GOODMAN'S PEPPERMILL RESTAURANT, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Order filed July 10, 1995.*
*Opinion filed January 11, 1999.*

ROGER C. GOBLE, for Claimant.

JIM RYAN, Attorney General (TOMAS A. RAMIREZ, Assistant Attorney General, of counsel), for Respondent.

## ORDER

EPSTEIN, J.

This 1986 claim is before us on the State's motion to dismiss the Claimant's amended complaint which was filed in February 1995 after eight and one-half years of unexplained and seemingly unwarranted delays. The Claimant has not responded to the State's motion, which was filed immediately after the amended complaint in February 1995. The State's motion to dismiss is jurisdictional and must be decided on its merits despite Claimant's failure to respond.

The State's motion to dismiss contends that this Court lacks jurisdiction, presumably subject matter jurisdiction, over this eminent domain action because (1) jurisdiction over "eminent domain actions" is "vested in the Circuit Court * * * by the [1970] Illinois Constitution," and (2) this Court lacks jurisdiction over a case that can be or could have been litigated in the courts of general jurisdiction of Illinois.

Although (1) it is far from clear that subject matter jurisdiction over eminent domain actions is constitutionally vested in the Circuit Court any more or any less than over other kinds of justiciable controversies, and although (2) as a general matter this Court has held and adheres to the second principal now invoked by the State, it is unnecessary to reach any application of either principal in

this case because it is clear that the claim asserted in the amended complaint is not an eminent domain action.

The State's motion mischaracterizes the pending claim, which is not an action by a condemning authority to exercise eminent domain powers. The amended complaint is a damages claim by a landowner alleging a *de facto* taking by the State, which is an *inverse* condemnation claim predicated on a cognizable loss or damage to property. Whether the amended complaint is adequate, or whether Claimant can prevail on this difficult claim, is not before us. But the basis of the State's motion is plainly incorrect, and there seems little, if any, doubt that an inverse condemnation action against the State, which is how this case is now pleaded, lies in this Court and not in the Circuit Court.

Accordingly, the State's motion to dismiss must be, and is, denied.

This cause is remanded to Commissioner Griffin with directions to set a final trial date, a final motion date, and to direct the State to file a departmental report as soon as feasible.

## OPINION

EPSTEIN, J.

This 1986 claim, which is styled as both an inverse condemnation action and as a constructive eviction action, seeks recovery of economic damages allegedly suffered by Claimant's restaurant business as a consequence of the Respondent's prolonged 1983-84 highway reconstruction work on Route 41 at Clavey Road in Lake County, Illinois. The case is finally before us for decision following its 1997 trial to Commissioner Howard Kane, who has filed his report to the Court.

## The Facts

For many years the Claimant owned and operated a restaurant, known at times as Bobby G's Restaurant, on leased property at the north end of the Edens Expressway in Lake County, *i.e.*, the point where the limited access Edens Expressway ends and the road continues north as Route 41, a semi-limited access four-lane highway. Claimant's restaurant was situated on the northwest side of the Route 41 (Skokie Highway)—Clavey Road intersection. At that point, Skokie Highway served as an exit ramp for the Route 41 traffic.

Claimant's restaurant was profitable for over 10 years. Claimant says that the restaurant was situated at a significant location because it was at the first "easy exit" to food service for northbound travelers from Chicago and was the last readily accessible stop for commuters heading south into the city. Claimant maintains that the restaurant maintained a strong breakfast business due to its location and accessibility. None of this was disputed at trial.

In 1983, Respondent, through its Department of Transportation ("IDOT"), implemented a major reconstruction project on Route 41, including the segment adjacent to the Claimant's Restaurant, where Route 41 became the Edens. The project included widening of the roadways, redesign of the entrance and exit ramps, and improvements in the road infrastructure. The project took at least two and one-half years according to Claimant; IDOT acknowledges that the project extended over both the 1983 and 1984 construction seasons.

The evidence at trial indicates that IDOT and its contractors did not completely obstruct ingress to or egress from the restaurant site. However, our commissioner concluded that the construction work did make access to the restaurant more difficult, a finding we accept.

The Claimant does not contend, and did not prove, that IDOT or its contractors used or invaded his leased property or physically altered it in any way.

IDOT's witnesses testified to their efforts to mitigate the impact of the project on adjacent landowners, particularly businesses, and to minimize the amount of work actually done in the vicinity of the restaurant, as well as the overall amount of time during the project period when traffic was substantially altered on Route 41. However, the essential facts are not materially disputed.

### The Legal Arguments Advanced

Although Claimant initially pleaded a "constructive eviction" theory in its complaint, this claim was tried and argued solely on the Claimant's alternative inverse condemnation theory. Claimant has abandoned its constructive eviction theory, which we will not further address.

The Claimant attributes the undisputed decline in the restaurant's business during the road reconstruction project to: (1) diversion of regular commuter and Wisconsin traffic to alternative routes; (2) the restriction of traffic to reduced numbers of lanes and consequent slowing; and (3) the enhanced difficulty during construction of exiting at Clavey road, reducing or eliminating a major attraction to the restaurant (i.e., visible and easy access). To recover the economic losses attributed to these causes, Claimant advances two theories asserting a liberally compensatory view of property rights and of eminent domain law.

First, Claimant urges a liberal construction of the Illinois Constitution's guarantee of compensation for "private property * * * *damaged* for public use." (1970 Ill. Const., Art. I, §15.) (Emphasis by Claimant.) Claimant relies on the settled caselaw under the 1870 and 1970

Constitutions, commencing with *Rigney v. City of Chicago* (1881), 102 Ill. 64, that recognizes access to adjacent public roadways as a "private property right inherent in ownership of real estate abutting a highway" that requires just compensation for a taking or material impairment.[1]

Second, based on decisions of the U.S. Supreme Court and of sister states' courts, Claimant argues that the law now recognizes as a compensable "taking" or "damaging" various non-invasive, non-possessory, indirect injuries to—or inhibitions on—the use of private land due to governmental actions.

Claimant cites *Griggs v. County of Allegheny* (1962), 369 U.S. 84, and *United States v. Causby* (1946), 328 U.S. 256, which both involved persistent low aircraft overflights; *Knight v. City of Billings* (Mont. 1982), 642 P.2d 141 (diminished value of property held compensable due to adjacent construction activities); *Knight v. City of Missoula* (Mont. 1982), 827 P.2d 1270 (interference with land use by nearby public construction project held compensable); *Harding v. Department of Transportation* (Dist. Ct. App. 1984) 205 Cal. Reptr. 561 (allowed damages for diminution of land value due to widening of abutting highway); *Lambier v. City of Kennewick* (Wash. App. 1989), 783 P.2d 596 (damages for collapse of house caused by adjacent highway construction); *Thomsen v. State of Minnesota* (Minn. App. 1969), 170 N.W.2d 575 (possible loss of lateral support due to adjacent construction warranted "damages" trial; claimed "taking" of unused highway access rights dismissed); *Board of Education v. Palmer* (N.J. Supr. Ct. 1965), 212 A.2d 564 (allegation of total destruction of beneficial use of school

---

[1] In *Rigney*, our Supreme Court gave a strongly remedial construction to the then-new "damages" clause of the 1870 Constitution's eminent domain clause (Art. II, Sec. 13), on the basis that the 1870 text had the added words "or damaged" that had not appeared in the 1848 Constitution. *See Rigney*, 102 Ill. at 74-75, discussed *infra*.

land due to adjacent construction requires trial on "taking" theory).

In defense, the Respondent contends that no inverse condemnation action lies for business interruption losses due to traffic diversion and access inhibition, because there is no property right that has been "taken" or "damaged" in contemplation of the Illinois Constitution (1970 Ill. Const., Art. I, Sec. 15) or the United States Constitution (Amendments V, XIV). Respondent cites three of this Court's decisions, *Spur Distributing Co. v. State* (1943), 13 Ill. Ct. Cl. 94; *Nauyoks v. State* (1941), 11 Ill. Ct. Cl. 542; and *Grothe v. State* (1937), 10 Ill. Ct. Cl. 49, as well as to two of our Supreme Court: *Chicago Flour Company v. City of Chicago* (1910), 243 Ill. 218; and *Peck v. Chicago Railway Co.* (1915), 270 Ill. 35. For the proposition that business losses due to traffic diversion are noncompensable as a matter of constitutional law because of the absence of a property right in the traffic flow, Respondent relies on *Department of Public Works v. Bloomer* (1963), 191 N.E.2d 245, and *Winnebago County v. Rico Corp.* (2d Dist. 1973), 11 Ill. App. 3d 882, 296 N.E.2d 867.

## Analysis

This case does not turn on resolution of difficult fact issues. This case turns on the (disputed) state of the law of compensable injury to property, and its application to the particular facts of this case where vehicular access to the Claimant's commercial (leased) property was significantly impaired but not prevented for a significant but temporary period.

Claimant is correct that Illinois recognizes road access, at least on adjacent roadways, as a property right and that its "taking" or elimination, as well as material permanent reductions, are compensable in eminent domain

proceedings (for "takings") or in inverse condemnation proceedings (for "damages" to property not taken). *Rigney v. City of Chicago, supra*; *Department of Public Works and Buildings v. Wilson and Co. Inc.* (1975), 62 Ill. 2d 131, 340 N.E.2d 12. The Illinois standard was articulated in *Rigney*, 102 Ill. 64, at 78:

"Under the [former] constitution ° ° ° it was essential to ° ° ° recovery ° ° ° that there should be a direct physical injury to the *corpus* ° ° ° of the property ° ° °; but under the present constitution it is sufficient if there is a direct physical obstruction or injury to the right of user or enjoyment, by which the owner sustains some special pecuniary damage in excess of that sustained by the public generally, which by the common law, would, in the absence of any constitutional or statutory provisions, give a right of action."

This standard "has stood unchanged and unmodified since *Rigney* was decided" in 1881, "has been approved by the highest court of this country [citations omitted] ° ° ° [and] has influenced development of American law. [citations omitted]." *Citizens Utility Co. of Illinois v. Metropolitan Sanitary District of Greater Chicago* (1st Dist. 1974), 25 Ill. App. 3d 252, 322 N.E.2d 857, 861 (Leighton, J.).

This principle was applied to access rights in *Rigney* (loss of access due to construction of viaduct presented a just compensation for "damages" issue for the jury), and has found repeated application in cases of taking or "material impair[ment]" of access to adjoining or adjacent streets, *Wilson and Company, supra*, 340 N.E.2d at 16 (citing numerous decisions). However, as the Supreme Court also stated in *Wilson (ibid.)*:

"Not every limitation of access is compensable. It has been held that a property owner is not entitled to damages resulting from the vacation of a [non-adjacent] street ° ° ° where his free access is not impaired even though the closing of the street ° ° ° may result in inconvenience and circuity of travel. [citations omitted.] In such cases the inconvenience to the property owner is deemed to be no different in kind than that experienced by the public in general, as distinguished from the closing of a street in front of the abutting owner's property which leaves it on a "blind-court." (citations omitted.) Similarly, a property owner has no property right in the flow of traffic along the street which abuts his premises ([*Department of Public Works and Buildings v.*] *Mabee*[, 22 Ill.2d 202, 205; 174 N.E.2d 801]); nor, if his right of

access is not materially impaired, can he complain of public improvements which either accelerate traffic flow [citation omitted], or have the effect of diverting traffic to other avenues (*Hohmann [v. City of Chicago*, 140 Ill. 226, 231, 29 N.E. 671 (1892)]) * * *.

* * *

The decisions thus indicate that the "right of access" * * * is a private property right inherent in ownership of real estate abutting a highway. When such access is taken or materially impaired by action of the State the property owner is entitled to compensation. If, however, there is no physical disturbance of the right of access *vis-a-vis* the abutting highway, then any damages which may result to the property owner as a consequence of a change in the use of the highway by the public are *damnum absque injuria* even though such damages may be very substantial."

The foregoing views are still the law of Illinois today, and dispose of Claimant's inverse condemnation claim for economic damages occasioned by the diversion of traffic away from its location and due to the inhibited access to the restaurant site caused by IDOT's construction activities. Claimant has asserted, and rested its claim upon, a kind of damages that are noncompensable as a "taking" or "damaging" of property rights—including access rights—in Illinois: *damnum absque injuria* in the classic language of our law.

We are unpersuaded by Claimant's authorities that this Court could (or if it could that it should) adopt or "recognize" a more liberally compensatory view of "damages" to property in order to redress economic losses caused by nearby State construction activities that are non-destructive, non-possessory, non-invasive and that do not involve "physical disturbance of the *right* of access" (*Wilson and Co., Inc., supra* (emph. added)).

First, the U.S. Supreme Court's decisions in *Griggs, supra*, and *Causby, supra*, are inapposite here, although they are authoritative constructions of the Fifth Amendment "taking" clause. Those cases involved no "access" issue; and the cognizable taking in *Griggs* and *Causby* were caused by extreme and constant aircraft noise that

was itself invasive of the property and different from the general public injury caused by the nearby public airport.

Second, the cited Montana and California decisions (*Knight v. City of Billings, supra* (Mont. 1982); *Knight v. City of Missoula* (Mont. 1992), 827 P.2d 1270; and *Harding v. Department of Transportation* (Cal. Dist. Ct. App. 1984)) reflect different, more liberal standards of compensable injury under the laws or constitutions of those states. Absent a change in Illinois law by legislation or decision of our Supreme Court, we are bound to apply this state's settled caselaw and must decline to follow those foreign decisions. The other foreign decisions cited by *Claimant* do not reflect a more liberal standard of "property rights" or compensability.[2]

Finally, our own precedents are fully in accord with the settled caselaw. The decisions cited by Respondent are exemplary. In *Grothe v. State* (1937), 10 Ill. Ct. Cl. 49, this court reaffirmed its holding[3] in *Grassle v. State* (1934), 8 Ill. Ct. Cl. 151, that:

> "Inconvenience, expense or loss of business necessarily occasioned to the owners of abutting property during the * * * construction of a public improvement, do not constitute damage to property not taken, within the meaning of the Constitution, but merely a burden incidentally imposed upon private property adjacent to a public work, and without which such improvements can seldom be made and therefore give no cause of action * * *."

In *Nauyoks v. State* (1941), 11 Ill. Ct. Cl. 542, which was a consolidated opinion on 19 claims, this Court reiterated the rule of *Rigney v. City of Chicago, supra,* but

---

[2] Those cases appear to be straightforward—but inapposite—applications of existing standards to direct *physical* damage claims occasioned by off-site governmental construction activities (*Lambier v. City of Kennewick, supra* (Wash. App. 1989), and *Thomsen v. State of Minnesota* (Minn. App. 1969)) or to an alleged total destruction of land's useability (*Board of Education v. Palmer* (N.J. Supr. Ct. 1965)).

[3] *Grothe* cited extensive precedent in this court: *Stein v. State* (1934), 8 Ill. Ct. Cl. 251; *Glenbard Golf Club, Inc. v. State* (1935), 8 Ill. Ct. Cl. 651; *Morlock v. State* (1935), 9 Ill. Ct. Cl. 92; and in the Supreme Court: *Osgood v. City of Chicago* (1894), 154 Ill. 194, 41 N.E. 40; *Lefkovitz v. City of Chicago* (1908), 238 Ill. 23, 87 N.E. 58; *Chicago Flour Co. v. City of Chicago* (1910), 243 Ill. 268, 90 N.E. 674; *Peck v. Chicago Railways Co.* (1915), 270 Ill. 34, 110 N.E. 414; *City of Westchester v. Ring* (1924), 312 Ill. 544, 144 N.E. 333.

observed: "The owner of property has no guaranteed assurance against diversion of traffic away from his place of business" (11 Ill. Ct. Cl. at 562) and we reaffirmed the unrecoverability of damages for "inconvenience, expense, or loss of business" to abutting properties that are caused by temporary access and traffic disturbance caused by nearby public works projects (*id.*, at 564). *Spur Distributing Co. v. State* (1943), 13 Ill. Ct. Cl. 94 is to the same effect.

This Court has enforced property rights, and has awarded compensation to landowners when their property rights were taken or materially impaired, *see, e.g., Harbeck v. State* (1943), 13 Ill. Ct. Cl. 70; *Benvenuti v. State* (1965), 25 Ill. Ct. Cl. 207. And this Court has awarded damages for ongoing material injury to access rights, when the injury has been shown to depreciate the value of the property, *e.g., Crites v. State* (1964), 25 Ill. Ct. Cl. 26. But the injury *must* be material and more than temporary to warrant compensation, and the Claimant must satisfy the governing measure of damages—the loss of value of the property—neither of which were proven by this Claimant.

## Conclusion

For the foregoing reasons, we find that the Claimant has not established a compensable injury to his property in this case, and has failed to prove cognizable damages to his property occasioned by actions of the Respondent within the ambit of Article I, section 15 of the Illinois Constitution of 1970. Accordingly, this claim is denied and forever barred.