(No. 36904.—

Central Illinois Light Company, Appellant, *vs.* Adolph C. Nierstheimer *et al.,* Appellees.

*Opinion filed Sept. 28, 1962.—Rehearing denied Nov. 29, 1962.*

FRINGS & MILFORD, of Pekin, and O'HERN, ALLOY, O'HERN & WOMBACHER, of Peoria, for appellant.

MELVIN O. MOEHLE, of Washington, and GERALD M. O'CONNOR, of Peoria, for appellees.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

Under the authority of an order of the Illinois Commerce Commission the petitioner, Central Illinois Light Company, filed a petition in the county court of Tazewell County to condemn a tract of land belonging to the defendants for the construction of steel towers to carry high-voltage power lines. The land taken in fee for the construction of the towers occupied a total area of approximately 1.55 acres, and in addition to condemning the fee for these sites, the petition sought to obtain an easement for right-of-way purposes, 400 feet in width running along the southerly property line of the defendant's land. The defendants filed a counterclaim alleging that the remainder of

the property, which was not taken, would be damaged by reason of the existence of the perpetual easement sought in the condemnation petition. The case was tried before the court without a jury and the court allowed $800 for the land taken in fee as the sites for the towers, $4,300 for damages to the land included in the easement and $20,000 for damage to the land not taken lying north of and adjacent to the easement. The petitioner has appealed to this court solely from the $20,000 award.

The defendants' property is an "L" shaped tract which lies immediately south of and adjacent to a State highway and consists of a 150-acre tract abutting on the road and a 40-acre tract which also abuts on the road, and adjoins the 150 acres on the east. The easement runs across the southerly boundary of the 150-acre tract. At the time of the filing of the condemnation petition, the property was devoted entirely to farm use and was improved with the residence of the defendants and some other farm buildings, none of which were located on the easement. The petitioner's witnesses testified that both before and after the taking the highest and best use of all of the property was for farming. One of these witnesses testified that the entire property had been damaged to the extent of $5,100 and the other witness testified that the damages amounted to $5,568, all of which was damage to the land included within the easement. The witnesses for the petitioner testified that there was no damage to the land not taken lying outside the easement.

The defendants' witnesses expressed varying views as to the highest and best use before and after the taking. One of the witnesses, Albert DeYoung, testified that before the taking the highest and best use was for residential subdivision purposes and after the taking it was for commercial and farming use. This witness considered that the 40-acre tract adjoining the 150-acre tract was not affected by the taking and therefore did not express an opinion as

to the value of this tract, either before or after the taking. He also excluded about 5 acres immediately surrounding the defendants' residence. This left approximately 145 acres on which the witness placed a value of $157,640 prior to the taking and $73,724 after the taking, arriving at a figure of $83,916 for damages, of which $23,616 was attributable to the property included in the easement and $60,300 was for damage to the land outside the easement.

Harold Reesman testified for the defendant that prior to the taking of the property it was best suited for residential subdivision purposes and afterwards for commercial and farming use. This witness valued the same 145 acres at $161,200 before taking and $81,534 after the taking, and thereby arrived at damages of $79,666, including $23,616 for damage to the property included within the easement and $56,050 for damages to the land outside the easement.

The defendants' witness Herman Heilman testified that the 40-acre tract would not be affected and also that the northerly portion of the 150-acre tract would not be affected. He therefore placed a value only upon the south 60 acres of the 150-acre tract. In his opinion the highest and best use of the 60 acres both before and after the taking was for industrial purposes. He testified that in his opinion the value of the 60 acres prior to the taking was $120,000 and that the value of the 60 acres after the taking was $62,350, thereby arriving at total damages of $58,250 of which $46,600 was attributable directly to the property included within the easement, leaving a figure of $11,650 for damage to the land not taken.

In summary, the petitioner's witnesses testified that there was no damage to the land outside the easement which was not taken, and the opinions of the defendants' witnesses as to the damage to the value of various amounts of the same land ranged from $11,650 according to Heilman and $60,300 according to DeYoung. The defendants contend

on this appeal that since the award made by the court was within this range of testimony the judgment must be sustained. The petitioner contends that all of the testimony of the defendants' witnesses as to the value of the land outside the easement which was not taken was based upon improper elements of damage and therefore that the court should not have considered any of the defendants' evidence.

It is settled that where opinions of witnesses in condemnation cases are based in part upon elements of damage which cannot legally be taken into consideration as well as upon elements which could properly be taken into consideration, these opinions do not form a proper basis for a verdict. (*Illinois Power and Light Corp.* v. *Cooper,* 322 Ill. 11, 18.) Therefore, if it appears that the opinions of the defendants' witnesses as to the value of the land not taken were based upon improper elements of damage, their opinions as to such a value should not have been considered by the trial court.

We have on several occasions had before us the question of the proper elements of damage in cases involving easements for power lines. The leading case on this subject is *Illinois Power and Light Corp.* v. *Talbott,* 321 Ill. 538. In that case the witnesses for the property owner testified that in their opinion the land not taken had been damaged in varying amounts. It appeared, however, that these witnesses took into consideration such elements of damage as danger from electricity by reason of broken wires, danger from fire and lightning, danger to crops if the towers were blown over, and danger of trespass by the utility's employees. We held that in order to recover damages for land not taken there must be evidence of a direct physical disturbance of a property right which the owner of the land enjoys in connection with his property. We also held that the imagined sources of danger considered by the property owner's witnesses were so remote and speculative and uncertain as to afford no basis for the allowance of damages. In the recent

case of *Trunkline Gas Co.* v. *O'Bryan,* 21 Ill.2d 95, involving an easement for pipeline purposes, the witnesses for the property owners testified that danger of fire and explosion from a leakage of gas from the pipeline would depreciate the value of the land not taken. Following the *Cooper* case, we held that mere fear of the presence of an instrumentality such as a pipeline does not rest upon a substantial basis and is not a proper element to be considered in determining depreciation of the land not taken. We have also held that the fact that a structure may be unsightly or offend the sensibilities of the owners does not justify an award of damages to land not taken. *City of Winchester* v. *Ring,* 312 Ill. 544; *Illinois Power Co.* v. *Wieland,* 324 Ill. 411.

In the present case, all three of the defendants' witnesses testified that in arriving at their opinion of the depreciated value of the land not taken, they considered the element of danger supposedly present as a result of the power lines. DeYoung testified that there was a possibility that one of the wires might snap and damage the property, Reesman testified that the property would be unsuited for residential use after the taking because of the fear that people would have of the towers and the powerlines, and Heilman testified that any building would have to be built at least 50 feet away from the boundary of the easement because there was a certain amount of danger in building too close to the powerlines. DeYoung testified that he had a "feeling" that people would not want to live near the easement, and Reesman testified that there would be a terrific loss in the value of the property due to the unsightliness of the towers which would be erected on the easement.

It is clear that all of the defendants' witnesses considered improper elements of damage in arriving at their opinions of the value of the land after the taking. The defendants contend, however, that since this case was tried by the court

without a jury, it should be presumed that the court considered only competent testimony and that, since the opinions of the witnesses were based in part upon proper elements of damage, their opinions were properly taken into consideration by the court. However, the cases we have referred to herein do not hold merely that the elements of damage considered by the witnesses are improper; they hold that the opinions expressed by the witnesses are incompetent. Therefore the trial judge should not have considered any of the opinions expressed by the defendants' witnesses as to the damage to the land not taken. As none of these opinions were properly considered, it is clear that there is no basis in the record for the judgment of the court.

As stated in this opinion, the witnesses for the defendants arbitrarily excluded certain of the defendants' property from their calculations on the assumption that the value of this property would not be affected. The proper rule in cases such as this is that the measure of damage to the property not taken is the depreciation of the fair market value of the property as a whole. (*Department of Public Works and Bldgs.* v. *Barton,* 371 Ill. 11, 19.) It was, therefore, improper for the defendants' witnesses to exclude from consideration a portion of the defendants' property.

The petitioner has also contended that the court abused its discretion when, on May 12, 1961, the court denied the petitioner's motion to strike a counterclaim in which damages were claimed to the remainder of the property not included in the easement area. It appears that on November 18, 1960, defendants filed an answer to the petition for condemnation in accordance with a court order on November 3, 1960. On April 12, 1961, a trial before the court without a jury commenced. On April 21, 1961, a mistrial was declared, and on that day defendants filed the counterclaim in question, which the court refused to strike pursuant to motion on May 12, 1961. Considering that the trial involved in this appeal began in June, 1961, we cannot say

that the court arbitrarily abused its discretion in permitting the filing of a counterclaim on April 21, 1961. Nowhere does the petitioner appear to be prejudiced thereby.

The judgment of the county court of Tazewell County is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*