OPINION OF THE COURT
Rose L. Rubin, J.
i
Defendant, a 68-year-old lawyer, who has practiced law for more than 40 years, moves to set aside a jury verdict convicting him of two counts of fraudulent disposition of mortgaged property. In addition to his activity as a lawyer, he also was and is the principal of a corporation, JPJ Contractors, Inc., hereinafter referred to as JPJ. JPJ is a company which purchased, rehabilitated and sold one- and two-family homes. Complainants are Mrs. Jeanne T. Stoye, a woman in her 80’s, and her daughter, Mrs. Joanne Ayers. Mrs. Stoye was defendant’s client in a matter involving a decedent’s estate. Defendant’s problems arose from a series of transactions following a consultation by Mrs. Stoye and Mrs. Ayers with defendant, as their attorney, in which they sought his aid in investing some of their assets.
At defendant’s suggestion, Mrs. Ayers and Mrs. Stoye loaned a total of $70,000 to JPJ in three transactions. Defendant assured complainants that these loans would be secured by three first mortgages on three parcels of real property. Accordingly, on October 7,1975, they loaned JPJ *56 $25,000. JPJ, by defendant as secretary, executed a first mortgage to both of them on premises located at 114-11 127th Street, Richmond Hill, Queens. On the same day, JPJ, by defendant as secretary, executed another first mortgage to Mrs. Stoye on premises located at 113-02 210th Street, Queens Village, Queens, to secure a loan by her in the amount of $22,500. At the same time, JPJ, by defendant as secretary, executed separate mortgage notes in conjunction with the respective mortgage which secured it. Each mortgage loan was to mature in 24 months, and carried an 81/2% annual interest rate.
Eight days later, on October 15,1975, JPJ, by defendant, executed a first mortgage to Mrs. Ayers on premises located at 186-16 Foch Boulevard, St. Albans, Queens, to secure a loan by her in the amount of $22,500. This mortgage likewise matured in 24 months. A mortgage bond evidencing the loan was simultaneously executed.
In each instance, by separate agreement, an additional bonus of 31/2% interest per annum was payable by JPJ.
Complainants testified that defendant gave them copies of the mortgages and retained the originals which he undertook to record. There is no dispute that at the time the mortgages were executed neither defendant nor JPJ owned the premises. JPJ eventually acquired title to two of the properties: the 210th Street property on June 15,1976, and the 127th Street-property on September 15, 1976. On acquiring the 127th Street property, JPJ executed a mortgage in the amount of $15,000 to a different party. Jayne Prince, defendant’s wife, gained title to the Foch Boulevard property on October 16,1975. It was never conveyed to JPJ or defendant.
On October 18, 1976, Mrs. Prince sold the Foch Boulevard property. On July 11,1977, the 127th Street property was conveyed by JPJ to Pajohn Management, Inc., a corporation owned by the defendant and his family, of which his wife was president and he was secretary. Although the deed recited that it was conveyed subject to the $15,000 mortgage executed in 1976, no mention was made of the mortgage held by Mrs. Stoye and Mrs. Ayers. That property was subsequently sold to a third party on May 7,1979. On October 6, 1977, the 210th Street property was con *57 veyed by JPJ, by deed signed by defendant, to persons otherwise unrelated to this matter. Inasmuch as the complainants’ mortgages had not been recorded, the sales were consummated without notice of sale to them, and without delivery of a satisfaction of mortgage to the respective purchasers.
JPJ continued to pay the monthly installments of interest until November, 1978. When the loans matured, JPJ failed to repay them. Thereafter, the complainants demanded repayment of their loans, which was refused.
ii
On June 15, 1979, an indictment was filed charging the defendant with the commission of three counts of grand larceny in the second degree and three counts of fraudulent disposition of mortgaged property. Following the submission of numerous motions and cross motions, by order dated May 15, 1980, this court granted defendant’s motion to dismiss the first three counts of the indictment, accusing him of grand larceny in the second degree, with leave to the People to resubmit to another Grand Jury. The People did not do so. Defendant’s subsequent pretrial motions to dismiss the remaining counts were denied by orders of this court dated December 8, 1980 and February 23, 1981.
The trial of this matter commenced on March 19, 1981. Upon defendant’s application, Count Nos. 4, 5 and 6 were renumbered Count Nos. 1, 2 and 3. They will be referred to as such herein. After the prosecutor’s opening address to the jury, the court granted defendant’s motion to dismiss the third count of the indictment on the ground that the People’s opening statement was inadequate as a matter of law as to that count. (People v Kurtz, 51 NY2d 380, 385, cert den 451 US 911.) The parties stipulated that neither defendant nor JPJ ever acquired title to the Foch Boulevard property, which was the subject of the third count of the indictment.
At the end of the People’s case, and again upon the conclusion of all of the evidence, defendant moved for a trial order of dismissal with respect to the two remaining counts. After jury verdict, defendant moved to set aside the verdict of “guilty” on both counts.
*58 III
The issue presented is whether a mortgage executed prior to the acquisition of the property described in the mortgage can be the subject of fraudulent disposition of mortgaged property where the property is subsequently acquired and then disposed of without satisfying the mortgage.
IV
The crime of fraudulent disposition of mortgaged property is defined in section 185.10 of the Penal Law as follows: “A person is guilty of fraudulent disposition of mortgaged property when, having theretofore executed a mortgage of real or personal property or any instrument intended to operate as such, he sells, assigns, exchanges, secretes, injures, destroys or otherwise disposes of any part of the property, upon which the mortgage or other instrument is at the time a lien, with intent thereby to defraud the mortgagee or a purchaser thereof.”
This statute basically restates former subdivision 1 of section 940 and subdivision 2 of section 1291 of the Penal Law. These sections were enacted in 1909 and were derived, without substantial change, from the Penal Code of 1881. In its 100-year history the current statute and its predecessors appear to have been invoked very seldom. Indeed, research fails to disclose any reported decision dealing with the issue before this court.
v
The basic tenet of statutory construction is set forth in section 5.00 of the Penal Law as follows: “The general rule that a penal statute is to be strictly construed does not apply to this chapter, but the provisions herein must be construed according to the fair import of their terms to promote justice and effect the objects of the law.” It is augmented by section 272 of Statutes (McKinney’s Cons Laws of NY, Book 1) enjoining that “In the construction of penal statutes the general rule is that the courts will give effect to the intention of the Legislature.” (People v Ditta, 52 NY2d 657, 660.)
Legislative intent can best be derived from the language used, giving the words their ordinary meaning. In the *59 interpretation of statutory language, a word having a well-settled legal meaning must be understood in such sense when it is used in a statute, unless a different meaning is plainly indicated. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 233; cf. People ex rel. Post v Fleming, 2 NY 484.)
It is well established that a mortgage is the conveyance of an interest in property intended by the parties to be security for the payment of money and requires no specific statutory authority to be valid (W.L. Dev. Corp. v Trifort Realty, 44 NY2d 489, 498). It represents a lien upon the mortgaged premises. (Holmes v Gravenhorst, 263 NY 148.) Here, each complainant testified that she believed she had received valid mortgages in exchange for the moneys loaned to JPJ. It was for the jury to determine what the parties intended, and whether that interest had been frustrated by fraudulent acts of the defendant. (Sandstrom v Montana, 442 US 510, 523.)
Although the documents were not recorded, section 291 of the Real Property Law establishes an unrecorded mortgage as valid except as to a subsequent good faith purchaser, who, for value, takes an interest in the realty without notice of the prior transaction. As between the parties, the mortgages create valid liens against the premises. (Sullivan v Corn Exch. Bank, 154 App Div 292, 294; Suffolk County Fed. Sav. & Loan Assn. v Geiger, 57 Misc 2d 184, 186; Ochenkowsky v Dunaj, 137 Misc 674, 675, affd 232 App Div 441; 2 Rasch, New York Law and Practice of Real Property, § 1736, pp 1360-1361.)
Defendant asserts, inter alia, that inasmuch as neither he nor JPJ owned either of the properties at the times of execution of the instruments, the purported mortgages were nullities. Assuming even the validity of the mortgages as between the parties, they did not constitute liens against the premises at the time of sale because of lack of title when the mortgages were executed, he contends. This contention is without merit.
The 127th and 210th Street properties were identified in detail in the documents executed. Although in each instance the property was purchased subsequent to execution of the mortgage, it has long been the law in this State that, as between the parties, an equitable lien arises and at *60 taches to the property as soon as ownership is obtained by the mortgagor. (People’s Trust Co. v Schneck, 195 NY 398, 401; Kribbs v Alford, 120 NY 519, 524; Jacobson v Smith, 73 App Div 412, 415; 2 Rasch, New York Law and Practice of Real Property, § 1719, p 1348.) It is irrelevant that the mortgages were never recorded because they were valid and enforceable as between the defendant and the complainants. (Sullivan v Corn Exch. Bank, supra, at p 294; Suffolk County Fed. Sav. & Loan Assn. v Geiger, supra, at p 186; Ochenkowsky v Dunaj, supra, at p 675.) Consequently, upon the acquisition of the properties by JPJ, the complainants acquired an enforceable equitable lien.
Defendant urges a distinction between an equitable lien and other liens. To draw such a distinction serves neither the purpose of promoting the ends of justice nor punishment of the wrongdoer. (People v Reilly, 255 App Div 109, 110, affd 280 NY 509.) In fact, were the court to do so, it would vitiate the legislative directive to avoid strict construction of the Penal Law. The court concludes that, at the time the premises were conveyed, the unrecorded mortgages constituted liens against them, thus forming a valid predicate to sustain the jury verdict convicting the defendant of two counts of fraudulent disposition of mortgaged property.