THE DEPARTMENT OF TRANSPORTATION, Petitioner-Appellant and Cross-Appellee, *v.* CLARENCE D. RASMUSSEN *et al.*, Defendants-Appellees and Cross-Appellants.

Second District No. 81—691

Opinion filed August 6, 1982.—Rehearing denied September 14, 1982.

Tyrone C. Fahner, Attorney General, of Springfield (Frank M. Daly and Douglas R. Engel, Special Assistant Attorneys General, and Roy E. Frazier, Assistant Attorney General, of counsel), for appellant.

Edward T. Graham, P. C., of Glen Ellyn, for appellees.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

'The Department of Transportation of the State of Illinois appeals from a judgment of $31,530 for damage to land not taken after a quick-take easement over part of defendants' property was granted in connection with construction of an overpass on State Route 51 in the City of Rochelle. (No appeal is taken from the award of $1800 for the easement.) The Department alternatively claims that prejudicial trial errors require a new trial. The defendants cross-appeal from the judgment which awarded interest at 6% per annum on the excess of final over preliminary just compensation, which they claim denies them fair compensation.

Defendants' property on which they operate a gasoline filling and service station is located at the southwest corner of Lincoln Avenue and Illinois Route 51 in Rochelle. The property is bounded to the south by a Chicago & North Western Railway right-of-way. The property has one driveway entrance on the north (Lincoln Avenue) side and two driveways on the east side.

On October 18, 1979, the Department filed a petition to condemn a three-year construction easement along the eastern edge of defendants' property. The easement was granted pursuant to the "quick-take" provisions of the eminent domain statute (Ill. Rev. Stat. 1979, ch. 47, par. 2.1 *et seq.*). The Department deposited $1080 as preliminary compensation to the defendants for the taking of the easement. An order vesting the Department with title in the easement was entered December 12, 1979.

The easement occupies about 1,245 square feet along the eastern edge of defendants' property at a width of either five or 10 feet. The Department obtained the easement to facilitate the construction of a highway overpass which will elevate Route 51 over a distance stretching from about a block north of defendants' property to about 900 feet south of the property. Construction of the overpass began in early 1980.

I

DAMAGES TO DEFENDANTS'
PROPERTY NOT TAKEN

■ Initially the Department argues that the trial court erred in finding that defendants suffer a constitutionally compensable im-

pairment of access to and from their property as a result of the construction of the overpass and attendant alteration of Route 51. The Department contends that defendants' property remained the same before and after the taking of the easement and construction of the overpass, with no change in access to the adjoining street, Old Route 51, and that defendants suffer no compensable injury when the flow of traffic is diverted to a new location, new Route 51. We think this is an oversimplification, and agree with the defendants' argument that access to the property was materially impaired when the old route was cut off in both a north and south direction by the abutments of the overpass, and by the closing of a direct access railroad grade crossing.

Roughly, the following depicts the traffic access prior to the improvement.

And, after the improvement:

Before construction of the overpass, Route 51 ran directly past the defendants' property and crossed the railroad right-of-way to the south at grade with no impediment to traffic flow both from the north and the south. After the construction of the elevated overpass, while the street on the eastern edge of defendants' property remains open to traffic at approximately the same grade as before (under the overpass), travel to and from defendants' property is restricted both to the north and to the south by the abutments of the overpass together

with the closing of the railroad grade crossing. Before construction, vehicles exiting defendants' property eastward could drive directly onto Route 51 and proceed north along that route; now they must drive north to Lincoln Avenue, then west one block, then north on a connecting street, then east on Fourth Avenue to gain access to Route 51. Vehicles turning south off the property will no longer be able to proceed to an east-west street south of the property; they will have to turn around at the former grade crossing and proceed north. Vehicles which could have approached directly from the south of the property before the construction must first proceed north of the property and then south to approach it.

Under these circumstances we must reject the Department's argument that mere circuity of travel, shared by the public generally, resulted from the relocation of part of Route 51 and that the decrease in the value of the defendants' property is therefore not compensable. See *Department of Public Works & Buildings v. Mabee* (1961), 22 Ill. 2d 202, 205; *Department of Public Works & Buildings v. Wilson & Co.* (1975), 62 Ill. 2d 131, 136-37; *Streeter v. County of Winnebago* (1980), 85 Ill. App. 3d 116, 120.

■ Article I, section 15 of the Illinois Constitution provides that private property shall not be "taken or damaged" for public use without just compensation. A " 'taking' " requires an actual physical invasion of property. (*Department of Transportation v. Lake Ka-Ho, Inc.* (1981), 98 Ill. App. 3d 1052, 1055.) The words "or damaged" were added to the Constitution in 1870 to compensate landowners for harm to their property rights caused by activities not amounting to takings. As explained in the seminal case of *Rigney v. City of Chicago* (1881), 102 Ill. 64, 78:

> "[U]nder the present constitution it is sufficient if there is a direct physical obstruction or injury to the right of user or enjoyment, by which the owner sustains some special pecuniary damage in excess of that sustained by the public generally, which, by the common law, would, in the absence of any constitutional or statutory provisions, give a right of action."

The words "or damaged" make it possible for a landowner to claim compensation "for the destruction or disturbance of easements of light and air, and of accessibility, or of such other intangible rights as he enjoys in connection with, and as incidental to, the ownership of the land itself." (*Horn v. City of Chicago* (1949), 403 Ill. 549, 554-55.) The claimant must show a direct physical disturbance peculiar to his property; depreciation suffered in common by all lands in the vicinity of an improvement is not compensable. (*Department of Public Works*

*& Buildings v. Bloomer* (1963), 28 Ill. 2d 267, 273.) The harm suffered by the landowner must be different in kind and not merely greater in degree from that suffered by the general public. *Department of Public Works & Buildings v. Wilson & Co.* (1975), 62 Ill. 2d 131, 140.

■■ ■ An owner of property which abuts a highway has a constitutionally protected " 'right of access,' " and the deprivation or material impairment of the right of access is compensable as a "damaging" of property. (62 Ill. 2d 131, 140-41.) Whether the right of access has been taken or materially impaired is a question of law. 62 Ill. 2d 131, 141.

Of particular significance to us in this case is the fact that it is not merely the public use of the highway which has changed; the physical characteristics of the adjoining highway in relation to the subject property have substantially changed as well. The effect of the reconstruction of Route 51 parallels that of erecting barricades along the railroad right-of-way and the north line of Lincoln Avenue. The road along the property's eastern boundary is blocked at one end and open, yet redundant with the northern boundary, at the other.

Cases which have dealt with street obstructions, vacations, dead ends and blind courts therefore seem most nearly relevant. In *Rigney v. City of Chicago* (1881), 102 Ill. 64, the claimant owned property fronting on Kinzie Street in Chicago, slightly east of its intersection with Halsted Street. The City installed a viaduct over Halsted and across Kinzie, cutting off the claimant's access to the west along Kinzie. The trial court refused an instruction which would have permitted compensation if the jury had found that by constructing the viaduct on Halsted Street access was prevented to Halsted Street from plaintiff's premises over and along Kinzie Street (except by means of a pair of stairs). The supreme court held that the claimant's property had been "damaged" by construction of the viaduct and reversed and remanded for determination of damages for impaired access to the west of the property. In *City of Chicago v. Burcky* (1895), 158 Ill. 103, the claimant owned property on the corner of 61st Street and State Street. The City vacated a portion of 61st Street, within the block in which the claimant's property was located but just west of the property's western edgeline, and built a viaduct along the southern edge of 61st Street. It is not clear whether access from the south via State Street was blocked. The supreme court held that the claimant could recover as she had suffered an injury not common to the public at large because communication south and west of the property was shut off and the abutting 61st Street was transformed from a thoroughfare into a "blind court." (158 Ill. 103, 110; see also *City of Chicago v.*

*Baker* (7th Cir. 1898), 86 F. 753.) In *Gibbons v. Paducah & Illinois R.R. Co.* (1918), 284 Ill. 559, the court found that access to the claimant's property, which fronted on Johnson and Sixth Street, was materially impaired by the presence of a railway embankment which made Johnson Street impassable as to the claimant and cut off access to the next cross-street east of Sixth Street.

In *Illinois Malleable Iron Co. v. Commissioners of Lincoln Park* (1914), 263 Ill. 446, the court laid down this general formulation of the rule to determine compensability of harm from street vacations:

> "The rule is stated in Elliott on Roads and Streets, (vol. 2, 3d ed. sec. 1181,) as follows: 'Owners of land abutting upon neighboring streets, or upon other parts of the same street, at least when beyond the next cross-street, are not, however, entitled to damages, notwithstanding the value of their lands may be lessened by its vacation or discontinuance.' " 263 Ill. 446, 452-53.

See also *Hacker Co. v. City of Joliet* (1915), 196 Ill. App. 415; *City of Chicago v. Union Building Association* (1882), 102 Ill. 379.

In *Department of Transportation v. Shaw* (1977), 68 Ill. 2d 342, relied upon in part by defendants, the court held that the closing of a road where it intersected a limited-access road was compensable as to land abutting the road closed, even though the land also fronted on another public highway which was left open. *Shaw* is not precisely on point; there the township road was entirely vacated whereas here the defendants can still pass from their property to the adjoining roadway and onto the system of public highways. However, *Shaw* does provide support by analogy; although the improvement here has not physically eliminated defendants' access to the old Route 51, it has rendered that "access" redundant and virtually valueless. *Shaw* also demonstrates that defendants may recover despite retaining full access both east and west along Lincoln Avenue.

The severe effects of this construction in limiting ingress and egress to the property are quite different from the relatively technical or formal disturbances involved in a number of other cases. For example, in *City of Chicago v. Central Standard Life Insurance Co.* (1966), 68 Ill. App. 2d 336, the court held that the closing of Wabash Street just north of 25th Street, where the claimant's property fronted on both streets, resulted only in slightly more circuitous travel for the claimant and did not amount to a material deprivation of access as an element of damage to the remainder. (68 Ill. App. 2d 336, 348.) In *Calumet Federal Savings & Loan Association v. City of Chicago* (1940), 306 Ill. App. 524, the claimant's property was located on the

intersection of Torrence and 95th Streets. The City erected barrier curbs on both the north and south sides of 95th Street and on Torrence north of 97th Street and built a new street, 96th Street, connecting Torrence with 8th Street via Colfax, which had previously terminated at 95th Street. The court held that the claimant could not be compensated as he had access both from Torrence and from 95th Street, as before, and that the only harm from the improvement was the slight increase in time required to reach the part of the property fronting on Torrence. (306 Ill. App. 524, 530-31.) Minimal disruptions in *Central Standard* and *Calumet,* unlike the changes here, simply made no practical difference to the landowners. Here, the practical difference is significant and material with the result that defendants are entitled to recover damages.

## II

### ALLEGED TRIAL ERRORS

The Department argues that the trial court erred in denying its motion to strike the testimony of Delbert Patzner, one of defendants' expert witnesses testifying to damage to the remainder. It maintains that Patzner's testimony was based in part on elements which included damages suffered by the public at large. We agree.

■ Patzner's testimony makes it clear that he did not limit his estimate of damages to the remainder to compensable losses, but figured the damaged as the decrease in fair market value resulting simply from the overpass being there, even while he conceded that such a decrease would affect any land in the vicinity of the improvement:

"A. Well, anytime that you have—If you have two $100,000 houses here and a $50,000 house here, this will bring the value of this house up, but bring the value of the two adjoining properties down. The overpass structure being the next neighbor to this property brings the value of the property down.

Q. Just the overpass being there?

A. Yes.

Q. Would that have anything to do with light, air and view?

A. Somewhat, yes.

Q. Then you did consider light, air and view?

A. Well, again I stated that I—

Q. Do you know what I mean by light, air and view?

A. The sixty-foot allowed limit in the city of Rochelle if you build on that, you would be looking at a structure.

Q. That would be view, wouldn't it?

A. Yes.

Q. Did that enter into your consideration?

A. No.

* * *

Q. Do you mean the structure being there thirty to thirty-five feet next to your station is going to reduce the value of your property?

A. Yes.

Q. You took that into consideration?

A. I considered that the new improvement that was put next to this property has reduced the value of the subject property just as much as two $100,000 houses and you set a $25,000 house in between. It is going to bring the value of this up and this down and that structure sitting there is no way that it cannot diminish the value of the subject property."

Patzner's testimony as to damages was based at least partially on improper elements of damage, and the trial court should have stricken it upon motion.

Depreciation suffered in common by all lands in the vicinity of an improvement is not compensable. (*Department of Public Works & Buildings v. Bloomer* (1963), 28 Ill. 2d 267, 273.) In *Schuler v. Wilson* (1926), 322 Ill. 503, one of the claimants occupied land which was not taken but which was adjacent to land taken for use as a school playground. The court held that she was not entitled to damages, even though her property decreased in value as a result of the use of the adjoining land as a playground, as there was no direct physical disturbance of any right which she enjoyed in connection with her property. In *Rigney v. City of Chicago* (1881), 102 Ill. 64, 80-81, the court noted that "the building of a jail, police station, or the like" directly depreciates the value of private property but is not compensable.

The overpass in the case at bar is analogous to the jail and police station in *Rigney* and the playground in *Schuler*.

Where a witness has considered improper elements of damage, his testimony will be deemed incompetent, even though in part based upon proper elements. (*Trunkline Gas Co. v. O'Bryan* (1960), 21 Ill. 2d 95, 100; *Central Illinois Light Co. v. Nierstheimer* (1962), 26 Ill. 2d 136, 140; *Department of Public Works & Buildings v. Bills* (1965), 66 Ill. App. 2d 170, 177.) Similarly, it appears that Patzner's estimate of damages took into account factors outside the bill of particulars, which claimed loss of access, and loss of light, air and view. A bill of particulars limits the pleader to the particular cause of action

mentioned therein; proof without pleadings is as defective as pleadings without proof. *Hemingway v. Skinner Engineering Co.* (1969), 117 Ill. App. 2d 452, 458, 462; *Shehy v. Bober* (1979), 78 Ill. App. 3d 1061, 1068.

The Department has also complained of error in the instructions to the jury. Since the cause is to be remanded we will review the questions raised as to those instructions which are likely to be tendered on retrial.

■■■ The Department's principal assignment of error concerns defendants' instructions Nos. 9, 10, 12, 15, 16 and 21, all of which contain the language "the property of the defendants is damaged by the installation of the highway overpass" or substantially similar language. The Department asserts that this broad language left the jury free to award damages to the defendants "simply because the highway structure was there," and not just damages based on compensable deprivations such as impairment of access.

Under the circumstances of this trial, it appears that the inclusion of the broad language was error, enabling defendants to recover damages flowing from the mere presence of the public improvement—*i.e.,* not limiting the damages to the decreased value of the property which resulted from a constitutionally compensable deprivation. What makes this language particularly prejudicial is the nature of the damage evidence introduced by defendants.

Not all factors bringing about a reduction in value represent recoverable damages to land not taken. *(Department of Public Works & Buildings v. Bloomer* (1963), 28 Ill. 2d 267, 273.) To sustain a claim for damages the depreciation in value must be from a direct physical disturbance of a right the owner enjoys in connection with his property. *Department of Public Works & Buildings v. Bloomer* (1963), 28 Ill. 2d 267, 273; *Rockford Electric Co. v. Browman* (1930), 339 Ill. 212, 218; *Schuler v. Wilson* (1926), 322 Ill. 503, 509.

The installation of the overpass on the public highway was not itself a taking of defendants' property, and defendants do not allege, nor would the record support, any damage to the remainder from the temporary construction easement. Compensable damages to land not taken must, in this case therefore, flow from a constitutionally compensable "damaging" of defendants' property, not from a "taking." *(Horn v. City of Chicago* (1949), 403 Ill. 549, 554-55.) The decreased fair market value resulting from the overpass is compensable only insofar as it flows from an impairment of access or another compensable damaging; otherwise, it is *damnum absque injuria. Rigney v. City of Chicago* (1881), 102 Ill. 64, 80-81.

The challenged instructions did not so limit the jury. The instructions were prejudicially misleading in allowing, if not directing, the jury to award damages for *any* decrease in value resulting from the presence of the overpass, not only for decreases in value resulting from any compensable deprivations or impairments of property rights.

This was a particularly serious error in light of the testimony of defendants' expert witnesses, who apparently based their damage estimates on the total decrease in fair market value resulting from the mere presence of the overpass on the public right-of-way. We have discussed the testimony of Delbert Patzner in this regard; it appears that the defendants' other expert witness, Herbert Harrison, also used a simple comparison of the value of defendants' property before and after the installation of the overpass, although he did specify that none of the damages he found were due to circuity of travel or decreased traffic. Harrison stated that these damages were a direct consequence of the taking of the easement, but appears to have meant this only in the sense that the overpass could not have been built had the easement not been taken. In general it appears that much if not all of defendants' valuation testimony must have taken noncompensable factors into account, magnifying the danger that the challenged instructions would mislead the jury. An instruction authorizing the jury to consider the damages arising from all the sources shown by the evidence in ascertaining the amount of the damages to the fair cash market value of land not taken is erroneous where the evidence included improper elements affecting market value. *Illinois Power & Light Corp. v. Cooper* (1926), 322 Ill. 11, 22.

## III

### THE CROSS-APPEAL-INTEREST

On cross-appeal, defendants challenge the adequacy of the interest awarded for the delay between the taking and the payment of final compensation. Under section 2.6 of the eminent domain statute (Ill. Rev. Stat. 1979, ch. 47, par. 2.6), defendants are entitled to interest at the rate of six percent per annum on any excess of final over preliminary just compensation from the date of the taking. Defendants argue that the six percent rate of interest is so unreasonably low as to deprive them of just compensation.

Under the "quick-take" provision of the eminent domain statute (Ill. Rev. Stat. 1979, ch. 47, par. 2.1 *et seq.*), the State may condemn and take possession of property before paying the owners full compensation for the taking (or for any damage to the remain-

der). It is established that the requirements of just compensation for takings under the United States and Illinois constitutions include interest for the delay in payment from the date of taking. (*Seaboard Air Line Ry. Co. v. United States* (1923), 261 U.S. 299, 306, 67 L. Ed. 664, 669, 43 S. Ct. 354, 356-57; *Miller v. United States* (U.S. Ct. Cl. 1980), 620 F.2d 812, 837; *Department of Conservation v. Jones* (1979), 75 Ill. 2d 557, 564.) The claimant must receive an amount sufficient to produce the full equivalent of the value paid contemporaneously with the taking; "interest at a proper rate" is a good measure of the amount to be added as compensation for the delay. (*United States v. Klamath and Moadoc Tribes* (1938), 304 U.S. 119, 123, 82 L. Ed. 1219, 1222-23, 58 S. Ct. 799, 801; *Seaboard Air Line Ry. Co. v. United States* (1923), 261 U.S. 299, 304, 67 L. Ed. 664, 669, 43 S. Ct. 354, 356; *Miller v. United States* (U.S.Ct. Cl. 1980), 620 F.2d 812, 839.) The determination of whether a given rate of interest is sufficient for just compensation is a judicial function and the statutory rate of interest applies only if it is constitutionally adequate. *Miller v. United States* (U.S. Ct. Cl. 1980), 620 F.2d 812, 837; *United States v. Blankinship* (9th Cir. 1976), 543 F.2d 1272, 1276; *State by Spannaus v. Carney* (Minn. 1981), 309 N.W.2d 775, 776.

Defendants argue that the six percent paid in this case is "grossly inadequate" as the nation's prime rate has been at least twice that amount since the date of the taking (the final award has apparently not been paid). Defendants' position finds considerable support in recent case law.

In *United States v. Blankinship* (9th Cir. 1976), 543 F.2d 1272, the court held that the 6% interest rate specified in the Declaration of Taking Act (40 U.S.C. sec. 258a (1970)) operated as a floor, but not a ceiling, for interest awards on delayed compensation. It noted that a rate no greater than 6% would in some instances contravene the just compensation requirement and "strongly suspect[ed]" that the takings in question (which occurred in 1973) were such an instance. 543 F.2d 1272, 1276.

In *Miller v. United States* (U.S. Ct. Cl. 1980), 620 F.2d 812, the court similarly construed the 6% rate specified by Public Law 90−545 (16 U.S.C. sec. 79c(b)(2) (1976)) as a floor under which prejudgment interest could not fall consistent with the intent of Congress and held that it was not constitutionally sufficient for the period from 1968 to 1980. The court fixed an award of 6½% for 1968-70, 7½% for 1971-75, 8½% for 1976-79, and 12% for 1980 to the date of payment. The court based its interest rates primarily but not exclusively on the yields on long-term corporate bonds rated Aaa by Moody's Composite

Index of Yields on Long Term Corporate Bonds.

In *In re South Bronx Neighborhood Development Plan* (1981), 110 Misc. 2d 57), 442 N.Y.S.2d 869, the court held that New York's 6% rate of interest was constitutionally inadequate for the period 1978-81 and, taking note of the rates of return on treasury bonds, treasury notes and corporate bonds, based its award on the return on medium-term public securities and applied a rate of 9% to the 1978-81 period. See also *Township of Wayne v. Cassatly* (1975), 137 N.J. Super. 464, 349 A.2d 545 (6% inadequate for 1970-1976); *In re Manhattan Civic Centre Area* (1968), 56 Misc. 2d 656, 291 N.Y.S.2d 656 (4% inadequate for 1965-68).

 ■ Defendants urge this court to hold section 2.6 of the eminent domain statute unconstitutional. However, where the court may reasonably construe a statute so as to preserve its constitutionality, it should do so. (*Miller v. United States* (U.S. Ct. Cl. 1980), 620 F.2d 812, 837-38; *People ex rel. Mathews v. Board of Education* (1932), 349 Ill. 390, 400.) This court therefore holds that, insofar as interest for the delay in payment is an element of just compensation under the United States or Illinois constitution, the six percent interest rate specified by section 2.6 is a statutory minimum only, with the proper rate of interest to be a question for the trier of fact (as is just compensation in general). See, for example, *State v. Jones* (1960), 271 Ala. 227, 123 So.2d 107.

It should be noted that courts deciding on appropriate rates of interest appear to rely most heavily on yields from high-grade corporate bonds and yields from government securities, such as treasury bonds. See, *e.g., Georgia-Pacific Corp. v. United States* (U.S. Ct. Cl. 1980), 640 F.2d 328, 365-67 (relying on Moody's Composite Index of Yields on Long Term Corporate Bonds and rejecting plaintiff's cost of borrowing as measure of interest due); *United States v. Blankinship* (9th Cir. 1976), 543 F.2d 1272, 1276-77 (relying primarily on United States Treasury obligations); *Pitcairn v. United States* (U.S. Ct. Cl. 1977), 547 F.2d 1106, *cert. denied* (1978), 434 U.S. 1051, 54 L. Ed. 2d 804, 98 S. Ct. 903 (relying on interest payable on long-term corporate bonds); *United States v. 97.19 Acres* (D. Md. 1981), 511 F. Supp. 565 (relying on a mix of securities); see generally Annot., 56 A.L.R. Fed. 477 (1982).

In this case the preliminary compensation was $1080 and the final compensation for the taking of the easement was $1800. The excess of final over preliminary compensation for the taking is, therefore, $720. Interest on the $720 should be figured from the date of the tak-

ing, December 12, 1979, to the date of payment.

The defendants have also claimed that the interest is inadequate with respect to the award of damages to the remainder. However, although the case is to be remanded with respect to these damages, the question as to interest in this connection will remain in the case, and we therefore address it.

■■ The United States Constitution does not require compensation for "damagings," but only for "takings." Thus a constitutional right to interest for the delay in payment of an award for damage to land not taken must arise, if at all, under the Illinois Constitution. Our supreme court has held, however, that the matter of interest on such awards is controlled by statute and that any right to such interest accrues solely by virtue of statute. (*Geohegan v. Union Elevated R.R. Co.* (1915), 266 Ill. 482; *City of Chicago v. Allcock* (1877), 86 Ill. 384. See also *City of Chicago v. S. Obermayer Co.* (7th Cir. 1920), 268 F. 237). We therefore hold that the statutory rate of six percent is not subject to constitutional challenge as it is applied to the interest paid by the Department on that part of the judgment representing damage to land not taken.

The judgment of the circuit court is vacated and the cause is remanded for a new trial on damages.

Judgment vacated and cause remanded.

LINDBERG and HOPF, JJ., concur.