2015 IL App (2d) 131251
No. 2-13-1251
Opinion filed September 9, 2015

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| DWG CORPORATION; SADDLEBROOK FARMS, LLC; SADDLEBROOK FARMS PHASE 5C, LLC; and SADDLEBROOK FARMS PHASE 5F, LLC, | ) ) ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 12-L-371 |
| THE COUNTY OF LAKE, | ) ) ) | Honorable Christopher C. Starck, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Justices Burke and Birkett concurred in the judgment and opinion.

## OPINION

¶ 1    In 2012, plaintiffs, DWG Corporation, Saddlebrook Farms, LLC, Saddlebrook Farms Phase 5C, LLC, and Saddlebrook Farms Phase 5F, LLC, filed a complaint for damages against defendant, the County of Lake. Plaintiffs alleged that, as a result of defendant's construction project, a property development owned by plaintiffs for residential and commercial use no longer had frontage on or direct access from Peterson Road in the Village of Round Lake Park. According to plaintiffs, the property incurred damages.

¶ 2    In 2013, the trial court granted defendant's motion for summary judgment after concluding that defendant's construction project did not result in plaintiffs' property being materially impaired.  Plaintiffs now appeal, contending that the trial court erred in concluding that their property did not suffer a material impairment.  We affirm.

¶ 3    The pleadings, affidavits, depositions, and admissions on file reflect that DWG Corporation is a property developer based in Winnetka.  Saddlebrook Farms, LLC, Saddlebrook Farms Phase 5C, LLC, and Saddlebrook Farms Phase 5F, LLC, are Delaware corporations that are primarily owned by DWG.

¶ 4    Plaintiffs own a 686-acre parcel of property located in the Village of Round Lake Park (the Village).  The property is located north of Peterson Road, west of Alleghany Road, and east of Route 60.  The Village approved the property as a planned-unit development to include both commercial and residential uses.  The Village approved the property to include 4,800 age-restricted residential units and a 40-acre commercial area, as well as various spaces, lakes, and recreational amenities.  The property's commercial area was located at the intersection of Peterson Road and Route 60.

¶ 5    Thereafter, defendant undertook a construction project that relocated Peterson Road approximately 400 feet to the southeast.  The original Peterson Road was renamed Behm Lane.  Defendant removed a portion of Behm Lane, located east of its former intersection with Route 60, and replaced that portion with a dead-end cul-de-sac.

¶ 6    Prior to the construction project, primary access to the property was via Peterson Road, which had a "T" intersection with Saddlebrook Road, located inside the property.  Vehicles could access Peterson Road directly from Route 60.  Following the construction project, and as a result of the cul-de-sac, vehicles can no longer access Behm Lane (formerly Peterson Road) via

Route 60. Instead, vehicles must use the relocated Peterson Road, turn left or right (depending on the direction of travel) onto a connector road, and turn left onto Behm Lane to access Saddlebrook Road.

¶ 7 On May 14, 2012, plaintiffs filed a single-count complaint against defendant. Plaintiffs alleged that defendant's relocation of Peterson Road materially impaired access to the property and, therefore, constituted a compensable "damaging" pursuant to article 1, section 15, of the Illinois Constitution. Ill. Const. 1970, art. 1, §15. Plaintiffs alleged that the property was more difficult to locate because it was no longer visible from a major highway, and that access to and from Route 60 was "both more convoluted and farther away (more than 3000 [feet]) than it was before [defendant's] construction project."

¶ 8 On August 16, 2013, defendant filed a motion for summary judgment. Defendant argued that, pursuant to *Department of Public Works & Buildings v. Wilson & Co.*, 62 Ill. 2d 131 (1975), damages that resulted from an exercise of police power to regulate and control traffic, as opposed to damages that resulted from a taking or from a material impairment of existing access rights, were not compensable. Defendant argued that, although the construction project resulted in a changed traffic pattern, it did not impair access to the property. In response, plaintiffs argued that defendant's relocation of Peterson Road constituted a material impairment. Plaintiffs noted that vehicles no longer had access to the property directly from Peterson Road and that Behm Lane was a double dead-end road without direct access to Route 60. Plaintiffs further argued that, once a trial court makes the threshold determination that a property owner's access to property has been materially impaired, a jury should determine the appropriate damages.

¶ 9 On October 1, 2013, after entertaining oral arguments, the trial court granted defendant's motion for summary judgment. The trial court concluded that it did not "believe that [the] new

access point is any different than the actual access point that the landowners had to start with." The trial court opined that "there might be a little more of a circuitous route to get to Route 60, but it's not substantially different *** as far as distance goes." Plaintiffs timely appealed after the trial court denied their motion to reconsider.

¶ 10 On appeal, plaintiffs contend that the trial court erred in granting defendant's summary-judgment motion. Plaintiffs argue that access to the property was materially impaired when Peterson Road was relocated. Plaintiffs further argue that they are entitled to compensation due to the physical changes to the roadway configuration and the resulting practical impact.

¶ 11 The sole function of a trial court in acting upon a motion for summary judgment is to determine whether a question of material fact exists. *Fritzsche v. LaPlante*, 399 Ill. App. 3d 507, 516 (2010). Summary judgment is proper when the pleadings, depositions, admissions, and affidavits on file demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Nelson v. Aurora Equipment Co.*, 391 Ill. App. 3d 1036, 1038 (2009). In reviewing a grant of summary judgment, we must construe the pleadings, depositions, admissions, and affidavits strictly against the moving party and liberally in favor of the nonmoving party. *Mills v. McDuffa*, 393 Ill. App. 3d 940, 948 (2009). Summary judgment is a drastic means of disposing of a case and should not be granted unless the movant's right to judgment is clear and free from doubt. *Id.* We review *de novo* an order granting summary judgment. *Nelson*, 391 Ill. App. 3d at 1038.

¶ 12 Section 15 of article I of the Illinois Constitution provides: "[p]rivate property shall not be taken or damaged for public use without just compensation as provided by law. Such compensation shall be determined by a jury as provided by law." Ill. Const. 1970, art. I, § 15. The words "or damaged" make it possible for a property owner to be compensated " 'for the

destruction or disturbance of easements of light and air, and of accessibility, or of such other intangible rights as he enjoys in connection with, and as incidental to, the ownership of the land itself.' " *Department of Transportation v. Rasmussen*, 108 Ill. App. 3d 615, 621 (1982) (quoting *Horn v. City of Chicago*, 403 Ill. 549, 554-55 (1949)). Thus, where a property owner's right of access has been materially impaired by State action, the owner is entitled to compensation. *Streeter v. County of Winnebago*, 85 Ill. App. 3d 116, 119 (1980). Whether a property owner's access has been materially impaired is a question of law. *Wilson*, 62 Ill. 2d at 141.

¶ 13    In *Wilson*, the State sought to acquire part of a tract of land that consisted of 5.24 acres, with 151.2 feet of frontage abutting the north side of Roosevelt Road in Du Page County. *Id.* at 134. Roosevelt Road, via the frontage, provided the only access to the property from a public street. *Id.* The State sought to acquire the land in connection with constructing an exit ramp from Route 83 to Roosevelt Road. *Id.* The project would have eliminated direct access from Roosevelt Road to the property, but the State proposed to construct a new paved frontage road on the property. *Id.* The new frontage road would run west on the defendant's remaining property to Monterrey Avenue, 85 feet north of its intersection with Roosevelt Road. *Id.* at 134-35. The trial court awarded the defendant $85,000 in damages. *Id.* at 136.

¶ 14    On review, our supreme court noted that "[n]ot every limitation of access is compensable." *Id.* at 140. In discussing prior cases, the *Wilson* court noted that a property owner is not entitled to damages that resulted from the vacation of a street in a block other than that in which his property is located, where the free access is not impaired; further, a property owner has no property right in the traffic flow on a street that abuts his property, and the owner has not suffered a material impairment when public improvements divert traffic to other avenues.

*Id.* However, the *Wilson* court emphasized "[t]he significance of the retention of direct access." *Id.* The court opined:

> "The decisions thus indicate that the 'right of access' with which we are here concerned is a private property right inherent in ownership of real estate abutting a highway. When such access is taken or materially impaired by action of the State[,] the property owner is entitled to compensation. If, however, there is no physical disturbance of the right of access *vis-a-vis* the abutting highway, then any damages which may result to the property owner as a consequence of a change of use of the highway by the public are *damnum absque injuria* even though such damages may be very substantial. This distinction can be illustrated by a rather common situation which occurs when a limited-access highway is constructed in a new location leaving a property owner's place of business still fronting as it was before on the old highway which has become a secondary road or access road for the new highway. In such a case there can be no question that serious economic consequences may result to the property owner, and it is quite possible that the highest and best use of his property would be changed. *** The consequential damages which occur do not result from any taking or material impairment of existing access rights but solely from the State's exercise of its police power to regulate and control traffic on the highways." *Id.* at 140-41.

The court held that the "inevitable conclusion" in the case before it was that the partial taking resulted "in a material impairment of existing direct access." *Id.* at 145.

¶ 15    After *Wilson*, this court considered whether the State materially impaired a gas station owner's property in Rochelle. In *Rasmussen*, 108 Ill. App. 3d 615, the defendants owned property abutting Route 51. Originally, Route 51 ran directly past the defendants' property to

the east, with no impediment to traffic flow from both the north and the south. *Id.* at 620. The State filed a petition to condemn a three-year construction easement along the eastern edge of the defendants' property. *Id.* at 618. The State constructed an overpass that elevated Route 51 over a distance stretching from approximately 1 block north of the defendants' property to approximately 900 feet south of their property. *Id.* at 620-21. Although the defendants' property retained direct access to Route 51, the construction restricted travel to and from the defendants' property from both the north and the south, including closing a railroad crossing to the south and creating a dead end. *Id.* Thus, before the construction, vehicles exiting the eastern portion of defendants' property had direct access to Route 51. Afterward, vehicles exiting that portion had to drive north to Lincoln Avenue, proceed one block west, then north to a connecting street, and back east again to gain access to Route 51. *Id.* at 621. Vehicles exiting the property to the east could no longer proceed south on Route 51, but instead had to head north. Further, vehicles that could have approached the property from the south on Route 51 were no longer able to do so. Rather, those vehicles were required to drive north and turn back south to gain access to the property. *Id.* The trial court entered a judgment in the defendants' favor and awarded them in excess of $30,000 in damages. *Id.* at 618.

¶ 16 On appeal, this court rejected the State's argument that the construction of the overpass created mere circuity of travel, shared by public users generally, which was not compensable. We emphasized:

> "Of particular importance to us in this case is the fact that it is not merely the public use of the highway which has changed; the physical characteristics of the adjoining highway in relation to the subject property have substantially changed as well. The effect of the reconstruction of Route 51 parallels that of erecting barricades along the

railroad right-of-way and the north line of Lincoln Avenue. The road along the property's eastern boundary is blocked at one end and open, yet redundant with the northern boundary, at the other." *Id.* at 622.

We concluded that, although the new overpass did not physically eliminate access from the defendants' property to Route 51, it had rendered that access "redundant and virtually valueless." *Id.* at 623. The court concluded that the "practical difference" to the defendants' property was "significant and material" and that the defendants were entitled to recover damages. *Id.* at 624.

¶ 17    In this case, we agree with the trial court that relocating Peterson Road 400 feet to the southeast, constructing a connector road, renaming the old Peterson Road "Behm Lane," and installing a cul-de-sac at each end of Behm Lane did not result in a material impairment. We find significant differences between this case and both *Wilson* and *Rasmussen*. In *Wilson*, the defendant's property no longer had direct access to and from Roosevelt Road, with the new access point being on an entirely different road, Monterrey Avenue. *Wilson*, 62 Ill. 2d at 135. Conversely, here, plaintiffs still had the same access point as before the relocation of Peterson Road. The circumstances here are directly consistent with the hypothetical put forth by the *Wilson* court, *i.e.*, that constructing a new limited-access highway in a new location and turning an old highway into a secondary road, with the property now fronting the secondary road, is not compensable. *Id.* at 141. More succinctly, in *Wilson*, the defendant did not retain the exact same access to the exact same road, which had been turned into a secondary road.

¶ 18    Further, we believe that the impairment to the defendants' property in *Rasmussen* was much more significant than the impairment here. In that case, the new construction did not merely relocate Route 51 and render the old portion of Route 51 as a secondary road under a new name. Instead, as we noted in *Rasmussen*, not only did the public's general use of Route 51

change, "the physical characteristics of the adjoining highway in relation to the subject property have substantially changed as well." *Rasmussen*, 108 Ill. App. 3d at 622. That is, Route 51 became an elevated overpass from approximately 900 feet south of the property to approximately 1 block north. Conversely, in this case, no such substantial change in the physical characteristics of Peterson Road occurred. Rather, Peterson Road was merely relocated 400 feet to the southeast, while still retaining direct access to Route 60, as it had before being relocated.

¶ 19 *Rasmussen* looked to cases that dealt with street obstructions, vacations, dead ends, and blind courts as relevant authority. *Id.* at 622-23. We held that, although the improvement did not physically eliminate the defendants' access to the old Route 51, it "rendered that 'access' redundant and virtually valueless." *Id.* at 623. Significantly, as pointed out by defendant here, the reconstruction in *Rasmussen* reduced the points of access to the property. In our case, the effect of relocating Peterson Road neither placed plaintiffs' property on a blind court nor reduced points of access to the property. Again, we find the circumstances here analogous to the hypothetical outlined by our supreme court in *Wilson*, where a new limited-access highway is constructed that leaves the property fronting an old highway that has been turned into a secondary road for a new highway. See *Wilson*, 62 Ill. 2d at 141.

¶ 20 Finally, we note that plaintiffs' property never had direct access to Route 60. Therefore, plaintiffs' access to Route 60 was not materially impaired by the relocation of Peterson Road. See *Street v. County of Winnebago*, 85 Ill. App. 3d 116, 120 (1980) (holding that summary judgment in the defendant's favor was proper after noting that the plaintiffs' direct access to Harrison Road was unaffected by the relocation of Bell School Road and therefore not materially impaired).

¶ 21   In sum, the relocation of Peterson Road 400 feet to the southeast, with plaintiffs' property retaining the same access to the old Peterson Road, did not materially impair plaintiffs' property even though the old Peterson Road became a secondary access road renamed Behm Lane. Therefore, defendant is entitled to summary judgment.

¶ 22   The judgment of the circuit court of Lake County is affirmed.

¶ 23   Affirmed.